446 So.2d 744 (1983)
Walter C. DUMAS
v.
Louis JETSON, H.M. "Mike" Cannon in His Capacity as Clerk of Court For the Parish of East Baton Rouge and James H. "Jim" Brown, Secretary of State.
No. CE 83 1347.
Court of Appeal of Louisiana, First Circuit.
December 5, 1983.
Norman L. Haymer, Jr., Baton Rouge, Alvin Turner, Jr., Gonzales, for plaintiff-appellant.
Janice Clark, Alfred Williams, Steve Marks and Glenn Lorio, Kenneth DeJean, Baton Rouge, for defendant-appellee.
Before LOTTINGER, EDWARDS, PONDER, COLE, SHORTESS, CARTER, SAVOIE, LANIER and CRAIN, JJ.[*]
PER CURIAM.
This is an election contest proceeding wherein plaintiff, Walter C. Dumas, a candidate for the Louisiana House of Representatives from District No. 61, alleges that irregularities and/or fraud exist in regard to the general election held on November 19, 1983, sufficient to affect the outcome of the election. In said election defendant received 4091 votes and plaintiff received 3878 votes, a difference of 213 votes. From a judgment maintaining an exception of no cause of action, plaintiff appeals. Defendant answers the appeal insofar as the trial court dismissed an exception of prescription.

*745 NO CAUSE OF ACTION
In plaintiff's original and second supplemental and amending petitions, plaintiff alleges:

5.
Petitioner alleges that irregularities and/or fraud exist in regard to the election on November 19, 1983, including but not limited to the casting of votes, tabulation and counting of votes cast in the General Election which irregularities and/or fraud effected the outcome of the election as regards to petitioner and defendant cited herein such that petitioner would have won the election held on November 19, 1983, as more specifically set forth hereinafter.

6.
Petitioner specifically alleges on information and belief that the conducting of the election, especially by the commissioners, the casting, handling, and tabulation in the November 19, 1983, General Election were irregular, fradulent, incorrect and that the said irregularities and/or fraud effected the outcome of the election as related to petitioner cited herein, including, but not limited, as example:
a) At precinct 10, ward 1, a commissioner, JERRY JOHNSON, despite protest from petitioner's poll watcher, ERNEST STEPHENS, and request from the commissioner-in-charge, CARRIE TEMPLE, electioneered and campaigned all day November 19, 1983, inside the polling place and in the voting booth for defendant, LOUIS JETSON, and intimidated petitioner's poll watcher, all in violation of R.S. 18:1461, et seq. and other applicable State and Federal laws prohibiting such acts within the restricted area surrounding the polling place;
b) Commissioners, JERRY JOHNSON AND JOHN B. SIBLEY, at precinct 10, ward 1, despite protest from petitioner's poll watcher went into the voting booth with voters who were not entitled to nor requested assistance in violations of R.S. 18:563 and other applicable State and Federal laws;
c) At precinct 70, ward 1, commissioner-in-charge, WILLIE SPEARS, was unable to be located from 8:00 to 12:00 noon. He was also unavailable from 12:30 p.m. to 3:00 p.m. during which times commissioners assisted voters in the voting booth who were not entitled nor requested any assistance in violations of R.S. 18:563 and other applicable State and Federal laws;
d) At precinct 32, ward 1, the commissioner-in-charge, J.P. WILLIAMS, consumed alcoholic beverages while conducting voting. Further, while one voter was voting, he opened the curtains, and told her to vote number 51, all in violation of R.S. 18:564, et seq. The commissioner-in-charge left this precinct at least six (6) times during the times votes were being cast;
e) At precinct 32, ward 1, commissioner-in-charge J.P. WILLIAMS, yelled out vote 51 to voters inside the polling place. Further he yelled out flight 51 is arriving;
f) At precinct 32, ward 1, commissioner-in-charge, J.P. WILLIAMS, gave to voters political ballots that contained defendant, LOUIS JETSON'S number;
g) At precinct 32, ward 1, commissioner-in-charge, electioneered and campaigned inside the polling place for defendant, LOUIS JETSON;
h) At precinct 63, ward 1, the commissioner-in-charge, RITA O'CONNER, was not qualified to serve as a commissioner. Further, she permitted commissioners to assist voters in the voting booth who were not entitled nor requested any assistance in violations of R.S. 18:563 and other applicable State and Federal laws;
i) At precinct 32, ward 1, commissioners despite protest from petitioner's poll watcher went into the voting booth with voters who were not entitled to nor requested assistance;
j) At precinct 10, ward 1, GERALDINE DAVIS AND JERRY JOHNSON, *746 were not qualified to serve as a commissioner.
k) At precinct 10, 32, 63 and 70 over 300 votes were illegally and/or fraudently cast for defendant, LOUIS JETSON;
l) At precinct 10, 32, 63 and 70 over 300 people voted who were unqualified to vote at said precincts;
m) More votes were tabulated at precincts 10, 32, 63 & 70 than persons signing the polling list to vote.
We conclude that plaintiff has stated a cause of action. Each individual allegation cannot be read separately, but rather must be read together. Importantly, after alleging various acts of misconduct, plaintiff alleges that over 300 votes were illegally cast, which if proven would necessitate a new or restricted election as authorized by La.R.S. 18:1432 A.

PRESCRIPTION
This suit was filed on Monday, November 28, 1983, at 5:27 P.M., some nine (9) days after the election. La.R.S. 18:1405 B provides a six (6) day time period after the election within which to file an action contesting the election. In computing the time, Sundays and other legal holidays are included, except that if the final day falls on a Sunday or legal holiday, then the next legal day shall be the final day. La.R.S. 18:1413.
We conclude that under La.R.S. 1:55 the Friday, November 25, 1983, after Thanksgiving is a legal holiday. Thus since November 25, 1983, was the sixth and last day, plaintiff had until Monday, November 28, 1983, to file suit. Therefore, the trial judge was correct in overruling the exception of prescription.
Therefore, for the above reasons, the judgment of the trial court is affirmed in part and reversed in part and remanded for further proceedings.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
LANIER, J., concurs in part and dissents in part for reasons to be assigned.
COLE, J. respectfully dissents. Appellant has plead only conclusions of law and now seeks to make a collateral attack upon the legality of votes cast without protest.
CARTER, J., dissents for reasons assigned by COLE, J.
LANIER, Judge, concurring in part and dissenting in part.
I concur with the holding of the majority on the issue of prescription.
I dissent from the holding of the majority that the petition states a cause of action as presently drafted. Pursuant to the Louisiana Election Code, as amended by Act 506 of 1980, an unsuccessful candidate in an election suit cannot prevail unless he alleges and proves substantial irregularities or error, or fraud or other unlawful activities in the election caused him to lose. La.R.S. 13:1401(B).
La.R.S. 18:1406(B) provides as follows:

The petition shall set forth in specific detail the facts upon which the objection or contest is based. If the action contests an election, the petition shall allege that except for substantial irregularities or error, fraud, or other unlawful activities in the conduct of the election, the petitioner would have qualified for a general election or would have been elected. The trial judge may allow the filing of amended pleadings for good cause shown and in the interest of justice. (Emphasis added).
Paragraph 5 of the petition generally tracks the language of La.R.S. 18:1401(B) and 1406(B) and alleges that irregularities and/or fraud in the election affected its outcome. Paragraph 5 does not set forth in specific detail the facts upon which these claims are made, but does state that the claims will be "more specifically set forth hereinafter."
Paragraph 6 of the petition is apparently intended to be the specific statement of facts required by La.R.S. 18:1406(B). Sub-paragraphs (a) through (j) of Paragraph 6 assert various illegal acts and irregularities but do not specify in detail how this conduct *747 affected the votes cast or the result of the election. Sub-paragraphs (k), (l) and (m) generally contend that over 300 votes were illegally cast for the appellant's opponent in four designated precincts but do not specify in detail why or how the votes were illegal. In my view, such allegations are essential to comply with the specific fact pleadings required by La.R.S. 18:1406(B).[1]
Pursuant to the authority of La.R.S. 18:1406(B), this matter should be remanded to the trial court to allow the appellant an opportunity to file an amended petition to specify how the election irregularities affected its outcome and to specify how or why the over 300 votes were illegally cast. If the appellant can amend to properly state a cause of action, this matter should proceed to a trial on the merits. If he fails to do so, his petition should be dismissed. La.C.C.P. art. 934.
NOTES
[*] Chief Judge Covington and Judges Watkins and Alford did not participate.
[1] The petition need not state the names of the persons whom it is alleged cast illegal votes. Garrison v. Connick, 291 So.2d 778 (La.1974); Brunet v. Evangeline Parish Board of Supervisors of Elections,376. So.2d 633 (La.App. 3rd Cir.1979), writs denied 377 So.2d 1240 (La.1979) and 380 So.2d 623 (La.1979).