462 So.2d 266 (1984)
Walter C. DUMAS
v.
Louis JETSON, et al.
No. CE 83 1420.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
*267 Norman Haymer, Jr., Charles C. Hayling, III & Alvin Turner, Jr., Baton Rouge, for plaintiff-appellant Walter C. Dumas.
Janice Clark, Baton Rouge, for defendant-appellee Louis Jetson.
Steve Marks, Baton Rouge, for defendant-appellee H.M. Mike Cannon, Clerk of Court.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
On November 19, 1983, Walter C. Dumas and Louis Jetson were candidates in the general election for the office of State Representative for District 61 of the State of Louisiana. This district is located in East Baton Rouge Parish. The parties stipulated that in the election 4,091 votes were cast for Jetson and 3,878 votes were cast for Dumas, a margin of victory of 213 votes for Jetson.
Dumas filed this election suit alleging fraud, voting by unqualified voters, improper assistance of voters by election commissioners, improper campaigning in polling places and improper conduct in polling places were sufficient to adversely affect the election's outcome. Made defendants to the suit were Jetson; the Clerk of Court for the Parish of East Baton Rouge, H.M. Cannon; the Secretary of State of the State of Louisiana, James H. "Jim" Brown; and the Commissioner of Elections of the State of Louisiana, Jerry Fowler. Jetson responded to the suit by filing a peremptory exception pleading the objection of no cause of action. The district court sustained *268 the exception and dismissed the suit. On appeal this court reversed that ruling and remanded to the district court for further proceedings. Dumas v. Jetson, 446 So.2d 744 (La.App. 1st Cir.1983). Jetson applied for a supervisory writ to the Louisiana Supreme Court which was denied. Dumas v. Jetson, 442 So.2d 462 (La.1983). After a trial on the remand, the district court rendered judgment in favor of the defendants and dismissed Dumas' suit at his costs. The district court also determined the suit was filed frivolously. Pursuant to La.R.S. 18:1432(B), the district court awarded damages of $500 and an attorney fee of $3,500 to the Clerk of Court and damages of $1,225 and an attorney fee of $7,500 to Jetson. Dumas again appealed. Jetson answered the appeal and sought damages and attorney fees for a frivolous appeal. Jetson also filed a motion to dismiss the appeal alleging the appeal bond was not timely filed. This court ruled Dumas had failed to timely file his appeal bond within the time prescribed in La.R.S. 18:1409(D) and the timely filing of the appeal bond was essential to properly perfect the appeal and dismissed the appeal. Dumas v. Jetson, 446 So.2d 747 (La.App. 1st Cir.1983). Dumas took a supervisory writ to the Louisiana Supreme Court. In a per curiam opinion, the Supreme Court ruled as follows: (1) this case involved two separate civil actions, a principal action to void an election and an incidental action for damages and attorney fees; (2) the election suit was controlled by the appeal period of the election code but the claim for damages and attorney fees was controlled by the general articles of the Code of Civil Procedure; and (3) the election suit was properly dismissed but the appeal from the judgment on the claim for damages and attorney fees was timely. The Supreme Court remanded the district court judgment awarding damages and attorney fees to this court for review and denied the application for writs on the election suit. Dumas v. Jetson, 445 So.2d 424 (La.1984).
The only matters before us on this remand are the claims for damages and attorney fees under La.R.S. 18:1432(B), which provides as follows:
If the trial judge determines that an action contesting an election or objecting to candidacy was filed frivolously, he may award all costs of court, plus a reasonable attorney fee, plus damages, to the defendant.
Because La.R.S. 18:1432(B) is a penal statute, it must be strictly construed. Cf. Hart v. Allstate Insurance Company, 437 So.2d 823 (La.1983).
The district court made the following factual findings: (1) there was no evidence to show for whom any single vote was cast (not even the candidates); (2) there was no evidence to show any unqualified voter was improperly allowed to vote or any qualified voter was improperly denied the right to vote; (3) Dumas waived his right to contest the residency qualifications of voters because he failed to exercise due diligence to determine residency and timely object; (4) there was no evidence a single person voted fraudulently; (5) there was no evidence commissioners actually cast votes for persons who were not disabled or illiterate; (6) there was no evidence any instructions given by commissioners to voters to show them the method to use to cast their votes in any way affected such votes; (7) there is no evidence improper conduct or campaigning in the polling places affected a single vote; (8) there is no evidence to show it is impossible to determine the result of the election; (9) Dumas did not have sufficient facts upon which to base an election suit; (10) the "entire case was one giant fishing expedition"; and (11) the suit was frivolously filed. After reviewing the record, we find these factual findings are not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The district court's damage awards are not a clear abuse of its much discretion. La.C.C. art. 1934(3); Reck v. Stevens, 373 So.2d 498 (La.1979). The attorney fees awarded are reasonable and within the broad discretion of the district court. Cf. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983); Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La. 1982). We adopt as our own and incorporate *269 herein the reasons for judgment and the supplemental per curiam of the district court, which are attached hereto as Appendixes A and B respectively.
Jetson answered Dumas' appeal and sought damages for frivolous appeal. La.C.C.P. arts. 2133 and 2164. The Louisiana Supreme Court ruled there were two appeals in this case, one from the election suit and the other from the incidental demand claiming damages and attorney fees for the frivolous filing of the suit. The election suit appeal was dismissed as not timely perfected. Because it was not timely perfected, we have no appellate jurisdiction over that matter and La.C.C.P. art. 2164 authorizing frivolous appeal damages is not applicable thereto. Knox v. Brown, 325 So.2d 295 (La.App. 3rd Cir. 1976). The appeal of the La.R.S. 18:1432(B) awards of damages and attorney fees is not frivolous because the amounts awarded are reasonably subject to dispute. Accordingly, the claim by Jetson for damages for a frivolous appeal is denied.
For the foregoing reasons, the judgment of the district court determining that this election suit was frivolously filed and awarding damages and attorney fees is affirmed at the appellant's costs.
AFFIRMED.

APPENDIX A

WALTER C. DUMAS

VERSUS

LOUIS JETSON, ET AL.

NUMBER 272,859 DIVISION L

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

ORAL REASONS FOR JUDGMENT

December 16, 1983

DOUGLAS M. GONZALES,

JUDGE PRESIDING
The Court has before it a challenge to an election in a general primary held on November 19, 1983 for election to the House of Representatives, District 61. The plaintiff in this case who challenges this election is Mr. Walter Dumas, who was a candidate in that election. He brings this action against his opponent, Mr. Louis Jetson, against the Clerk of Court, Mr. Cannon, the Commissioner of Elections, Mr. Fowler, and the Secretary of State, Mr. Brown. The defendants in this suit have answered and filed a reconventional demand. The Court had previously maintained an exception of no cause of action. That matter was reviewed by the First Circuit Court of Appeal, and upon review, the matter was remanded to this Court for trial, which trial has taken place over the last several days.
Generally, the petitioner makes various allegations in his original and two supplemental petitions. One allegation being generally that the election was conducted improperly by the election officials in allowing fraudulent votes, illegal votes, and also allowing unqualified voters to vote. It was stipulated by and between the parties that the difference between the candidates was two hundred and thirteen votes. The precincts that comprise District 61 were also stipulated to by and between the parties. It was also stipulated between the parties that there were no challenges to the qualifications of the voters either before the election, under the provision of the Election Code found in Section 191, et seq. of Title 18, or were they challenged on election day, pursuant to Section 565. In his answer, defendant Jetson raises the issue of damages and attorney fees.
As discussed in the argument on the exception of no cause of action, and throughout the trial, the proper standard for review by a court in an election contest suit is set out in Sections 1431, 1432 and 1433 of the Election Code.
Section 1433 deals with malfunctioning voting machines, and it was stipulated by counsel, and the record shows, that there are no allegations or facts relative to malfunctioning voting machines.
*270 Section 1431 deals with fraudulent or illegal votes, and it requires the reviewing trial court to subtract votes from or to add votes to a particular candidate. It was stipulated by counsel, and the evidence shows, that there are no allegations or proof as to how any one single vote was cast, not even the votes of the candidates themselves was placed in the record.
The only possible section which could be applicable in this case is Section 1432, which provides three criteria for vesting in the court the discretion to order a new election. They are:
"If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of an election, or (2) the number of qualified voters who were denied the right to vote by election officials was sufficient to change the result in the election if they had been allowed to vote, or (3) the number of qualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) herein would have been sufficient to change the result had they not occurred ..."
There is no allegation nor proof that any unqualified voter was improperly allowed to vote by an election official, or that any qualified voter was improperly denied the right to vote by an election official.
The only allegation which could possibly have any substance is that contained in Paragraph 6 of the plaintiff's petition claiming more than three hundred unqualified voters were allowed to vote. The basis of these three hundred or so voters being unqualified, according to the plaintiff, is that, in violation of 18:110 B, these voters had a permanent residence outside of the precinct in which they voted for more than ninety days prior to the election on November 19th.
In ruling on the admissibility of this evidence, the Court has already stated that a challenge to the qualification of a voter who fits into this category, according to the Election Code, must be at one of two times, either prior to the election through the process set up in Section 191, et seq., wherein two citizens may, by affidavit, challenge the qualification of voters through the Registrar of Voters Office, or through Section 565 which allows anyone, commissioner, poll watcher, or voter, to challenge the qualifications of a voter based on his residency in a precinct.
The simplest review of the jurisprudence would reveal that these statutes mean exactly what they say, and the simplest review of the Election Code would show that the burden for challenging voters who live outside of their precinct is upon candidates and other parties and not upon election officials[1] and that the failure to urge these challenges timely results in their waiver. Section 1434 specifically reads:

*271 "An objection to the qualifications of a voter or to any irregularity in the conduct of the election which, with the exercise of due diligence, could have been raised by a challenge of the voter or objections at the polls to the procedure is deemed waived."
These articles merely codify what has been the law of this state for some time. A simple and cursory review of the annotations under these statutes would show the case of Veuleman v. O'Con, 417 So.2d 131, which says:
"The jurisprudence construing these statutes holds that voters who have not properly registered and qualified to vote must be formally challenged either before or at the time they offer to vote. In the absence of a formal challenge according to the statutory procedure, the qualification of a voter cannot be collaterally attacked in an election contest after the election has been completed."
The Court, in the Veuleman case (La.App. 3d Cir.1982) was quoting from Fontenot v. Lee, 359 So.2d 1091 [1071 (La.App. 3d Cir. 1978)]. A simple inspection of the jurisprudence would have revealed that the facts in Fontenot v. Lee are similar to the allegations in this case. In the Fontenot case, there were broad, general, conclusional allegations about unqualified voters who were allowed to vote. There the Court said:
"When this case was previously before us, we found that plaintiff had stated a cause of action as to the fraud and irregularities discussed above, so we did not reach the allegations of plaintiff's petition in Paragraph 10(3), (4) and (5) which are quoted in our previous opinion. Subparagraph (3) alleges that four named voters lived outside District C but nevertheless voted. Subparagraph (4) alleges that fraud and irregularities were committed during the absentee voting, but no specific irregularities are alleged. Subparagraph (5) alleges that other irregularities would be proved at trial, but these are not specifically alleged.
"After the case was remanded, the district judge refused to allow plaintiff to introduce evidence regarding the allegations in Paragraph 10(3), (4) and (5). On this appeal, plaintiff contends this was error, and he reurges these grounds."
That is the same issue that is before this Court and has been the basis of this Court not allowing the testimony in Paragraph 6(i), (j) and (k) of the second supplemental and amending petition. Returning to Fontenot v. Lee, the Court said:
"As to subparagraph (3), our statutory law provides the procedure for attacking the improper registration of voters prior to the election and provides for challenge at the polls by a commissioner or any other person who may contend a voter is not properly registered. LSA-R.S. 18:245 and 18:352.
"Jurisprudence construing these statutes holds that voters who have not properly registered and qualified to vote must be formally challenged either before or at the time they offer to vote."
The Fontenot case cites Timberlake v. Lindsey as authority for that proposition.
In Timberlake v. Lindsey, 430 [140] So.2d 406 [(La.App. 3d Cir.1962)], the Court says:
"In our opinion, the district court correctly held that the contestant's failure to challenge the qualifications of the electors in writing and according to the procedure mandatorily required by the cited statutes, prevents him from raising the question of their disqualification by reason of non-residency after he has lost the election."
The research that this Court just did on this matter took about forty minutes. Those prior cases make it clear that it has always been the law of this state that qualifications based on non-residency in a precinct must be raised prior to the election or at the polls. A simple reading of the Election Code would show that those principles have been codified. The only possible changes are some procedural methods by which challenges are made now as opposed *272 to how they may have been made in the past.
That being the legal conclusion of the Court with regard to what the Court has called the major allegation of the plaintiff's petition, it only leaves two other areas that this Court should address, namely, the allegation that voters were given general assistance in voting and that some electioneering occurred during the course of the election.
With regard to the assistance, the Court has already spoken to that issue many times and I have construed that the procedure for assisting voters set out in the Code is limited to those voters who are completely unable to cast their own vote because of a physical handicap or illiteracythey cannot read a number or a name or they do not have the physical ability to pull a lever or mark a ballot. In those situations, the law allows for election officials to take on a very sacred trust, namely, to cast the vote for the voter. And it sets out a specific procedure as to how that is to be done (18:564). And in those circumstances, that procedure must be followed. The Court finds none of those circumstances in the evidence of the record before it. On the contrary, the Court finds that some general assistance was given to voters in demonstrating how voting machines operate, in demonstrating how to open and close the curtains, and other general directions on voting procedures. The Court is of the opinion that this is not prohibited but on the contrary is required of election officials. The Court further notes that the record is totally, absolutely, completely void of any showing that this general assistance changed or affected the vote of any voter who cast his vote on that day.
With regard to the complaints of electioneering, this Court does not have to decide whether or not the conduct presented by evidence in this record constitutes electioneering. It may or it may not. That issue addresses itself to the prosecuting authority of this state. Persons who are aggrieved of that activity have a remedy at law by having the parties who are guilty of those transgressions prosecuted. This Court would only be interested in such conduct if it had some effect on the vote on November 19th. This Court finds as a fact that the record is totally, absolutely, completely void of any evidence whatsoever which would suggest, if electioneering did in fact take place, that it had any effect not only on the outcome of the race, but on any single, individual voter. At best, these complaints of electioneering can be classified as "sour grapes" by a candidate who was not successful.
Applying the standards of Section 1432, there is no evidence in the record which would make it impossible to determine the results of the election. The results of this election are that candidate Louis Jetson received 4,091 votes and candidate Walter Dumas received 3,878 votes. And there is not one single piece of evidence to indicate to the contrary. There is not one single piece of evidence to indicate that the will of the electorate was in any way tampered with or thwarted.
The only issue remaining is whether or not the petitioner had sufficient enough factual information on which to bring this suit. The Court is of the opinion that he did not, that this action was frivolously brought. A simple review of the statutes and jurisprudence would have made it clear to the plaintiff that a challenge to an election based on residency was too late. A simple review of the statutes would have made it clear that a challenge based on general assistance at the precinct is not an irregularity at all. But more importantly, the plaintiff has totally failed to prove, or even attempted to prove, that the irregularities complained of had any effect on the election result.
The presentation of the evidence shows that the plaintiff was entirely unfamiliar with the evidence that would be presented by his witnesses. His entire case was one giant fishing expedition.
In his pleadings, the plaintiff claimed fraud, and in argument asserted that some persons who voted on November 19th were in fact not the actual registered voters. *273 He presented evidence of three witnesses supposedly to that effect, but all three directly refuted the allegations of his petition and testified directly to the contrary. It was obvious to the Court and to all present that at all times throughout this trial, the plaintiff has been searching for evidence in the judicial process on which to base his case, as opposed to finding facts prior to filing this suit. I believe this is exactly the sanction and exactly the type of case the Legislature had in mind when it provided for damages and attorney fees for frivolous suits. Election suits are extremely unusual processes. They are extraordinary suits. They work within an extraordinary time frame. The Court system is required to set aside all that it does and move this suit, this type of suit, by preference and priority. Because it is so extraordinary in nature, it requires both extraordinary pleadings and proof. It is not an ordinary lawsuit. The ordinary standards applicable to a lawsuit did not apply to it. The remedies that it brings about are extraordinary. These suits should not be filed for light, transient or petty reasons. When that is done, when they are filed for those reasons, the law requires an examination of both the allegations and the evidence presented to determine whether or not there ever was any basis for contesting this election. This Court finds that there never was any, and that this suit should not have been brought.
There is little jurisprudence to guide the Court in determining what are damages. Whether damages may be awarded to all defendants or only to political contestants is not clear. However, being aware of the extraordinary procedures required to accommodate an election suit both by the Court and public officials, and being aware that this type of suit places everyone else who is seeking justice in this courtroom back a few days, a few hours, or even a few weeks, the Court believes that damages should be awarded to all that are affected thereby, the election officials as well as the contestants.
Accordingly, the Court will award damages as follows: to the Clerk of Court for its extraordinary expenses which are attributable only to this lawsuit, the sum of five hundred dollars; to counsel for the Clerk of Court, the sum of three thousand, five hundred dollars; to the defendant, Mr. Louis Jetson, the sum of one thousand dollars; to the attorneys for defendant Louis Jetson, seven thousand, five hundred dollars. Further, to the attorneys for defendant Mr. Jetson, the sum of two hundred twenty-five dollars for expenses. The Court does not believe that the claim for expenses such as duplicating services and office supplies are extra expenses. The Court believes that those are normal expenses attributable to the profit and/or overhead portion of the attorneys' regular time that they charge by the hour.
For the foregoing reasons, the motion for dismissalI believe improperly termed a directed verdictwill be granted, and the relief sought by the defendant will be granted.
All costs of these proceedings are to be borne by plaintiff. Counsel for the prevailing party will prepare a judgment as soon as possible. The appeal period for that judgment will be within twenty-four hours of its signing. Counsel for the plaintiff will be notified of the date and time of the signing of the judgment.
This Court is adjourned.

APPENDIX B

WALTER C. DUMAS

VERSUS

LOUIS JETSON, ET AL

NUMBER 272,859 DIVISION "L"

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

SUPPLEMENTAL PER CURIAM

December 19, 1983
During the course of trial, the Court pointed out to counsel for the plaintiff on *274 several occasions that it would not be necessary to challenge the qualification of voters prior to election or at the polls if a showing was made that with the exercise of due diligence he could not have learned of sufficient facts on which to challenge voters. Despite the Court's comments, there was not even an attempt made to show that Mr. Dumas did not know that many voters had residence out of the precinct where they had registered for more than ninety days prior to the election.
There are numerous ways this information can be obtained. A simple comparison of the voter lists with the telephone directory, the city directory or a criss-cross service would reveal numerous changes of address. Mailing political advertisements or ballots to the address on the voter list by first class mail would likewise produce hundreds of returned letters not delivered and thus would disclose a change in address. This court commented many times during closing argument that there was a total failure on the part of the plaintiff to show what diligence, if any, was used to learn of the potential disqualification of voters. The rule of law applicable here is that evidence within the control of a party and not produced by him is presumed not be in his favor. All that was necessary was for Mr. Dumas to have taken the stand and said why he could not discover these facts.
Certainly, his own testimony was within his control. Since he put on no evidence on this issue, nor did he take the stand, the presumption is that he knew of the facts or made no effort to learn them until after the elections. The Court is informed that counsel and plaintiff now tells the news media he did not learn of the disqualification until after the election. He can not supplement what is missing from the record. A statement to the press or in argument to the Court of Appeal does not constitute evidence in the record nor can this critical evidence be supplied by the appellate court from conjecture. La.R.S. 18:1434 requires either a challenge to a voter or a showing that due diligence failed to produce information that would form the basis of a challenge.
The Court notes that Section 111 of the election code makes a woman, under certain circumstances, not a legal registrant. (See 18:111) If plaintiff's theory is correct a candidate who has lost a close race (say by 10 votes) could simply check the polls for 10 women who met the disqualifications of Section 111 and after the fact, challenge them and ask for a new election on the basis it was now impossible to determine the result. Such a practice would have courts determine every close election and would place enormous power in the hands of the civil trial judges in East Baton Rouge Parish, the seat of state government. No such attack on elections was ever intended by this legislature.
Baton Rouge, Louisiana, this 19th day of December, 1983.
 /s/ Douglas M. Gonzales
 DOUGLAS M. GONZALES
 JUDGE, DIVISION "L"
NOTES
[1] Sec. 562 of the Election Code, subsection D states:

"Identification of Voters.
A voter need not have his registration certificate or any other instrument in his possession in order to vote in a primary or general election. The commissioner shall identify each applicant in the presence and view of the bystanders in the following manner:
"... (2) In parishes where the computer system is used, (East Baton Rouge is in this category), by comparison with the descriptive information on the computer voting list."
It is clear from these sections that a commissioner cannot require any driver's license, credit cards or other type of identifying papers. His only method of identification is by comparison with the descriptive information on the computer voter list. Registrar of Voters, Nathaniel Bankston, testified what this information is and that it is determined by state law and the Federal Voters Rights Act. The federal law prohibits racial identification (as does state law) and state law requires date of birth, address, sex and voter certificate number. (See Sec. 104). Since no "registration certificate or any other instrument" need be in the possession of a potential voter, and since the commissioners can only identify a voter by the comparison process, it is clear that no further challenge can be made to a prospective voter by a commissioner. It is equally clear that the law places the burden of challenging unqualified voters on the candidates or other interested parties.