PER CURIAM.
After a thorough review and evaluation of the record as it is constituted on appeal, we find no merit in the assignments of error raised by appellant. In addition we find no merit in the assignments of error raised by appellees in their answer to the appeal. Accordingly, we affirm the judgment of the trial court and adopt its *771 reasons as our own. Costs of the appeal are to be equally divided between appellant and appellees.
AFFIRMED.
NO. 307,695, DIY. “M”
19TH JUDICIAL DISTRICT COURT PARISH OF EAST BATON ROUGE STATE OF LOUISIANA ORAL REASONS
•TUESDAY, OCTOBER 28, 1986
THE HONORABLE JOSEPH F. KEOGH, JUDGE PRESIDING
At the outset, let me express the Court’s appreciation to the attorneys for both sides of the issues which we’ve been trying for the last four days for not only a job well done but a job done with a maximum of decorum, except for one slight brief moment, which can be excused in a four-day hearing, three-day, four-day at the most if you consider today part of it.
And the remarks beginning now are for the record and are the opinion of the Court: Mr. Nat Bankston is a public official of excellent reputation and has been known by this Court for many years. This Court feels strongly that the defendant, Mr. Bankston, is a person of outstanding character, superior ability and unquestioned honesty and integrity. Nothing in this Court’s following reasons for judgment and opinion are in way intended to nor should be considered to denigrate Mr. Bankston’s reputation, ability, character, honesty or integrity. There has been a plethora of testimony and evidence introduced during three days of trial relative to voters in East Baton Rouge Parish whose names were removed from the voting rolls of the Registrar of Voters due mainly to an improper domicile address, which removals plaintiffs allege were illegal.
We do not need nor shall we at this time determine whether these removals were substantively correct, i.e., whether the voter or voters actually did move their domicile without advising the Registrar as the law requires, et cetera, because the Court finds the procedural requirements of notice under R.S. 18:193 were not complied with by the Registrar of Voters of East Baton Rouge Parish in the notices mailed to the registered voters on 7-14-86, requiring an appearance before the Registrar by 7-23-86.
R.S. 18:193 requires that the person, the voter, be notified by the Registrar to appear at the Registrar’s office “within ten days after the date the notice and citation were mailed.” A citation mailed on 7-14-86 requiring an appearance by 7-23-86 does not satisfy the requirement of the Statute.
In Louisiana Code of Civil Procedure Article 5059, the Legislature has told us how to compute such time delays, and it reads as follows:
In computing a period of time allowed or prescribed by law or by order of court, the date of the act, event or default after which the period begins to run is not to be included. The last day of the period is to be included unless it is a legal holiday in which event the period runs until the end of the next day which is not a legal holiday.
The legal holiday portion of this Article is irrelevant in this case.
Also, in the case of State v. Gehlbach, Louisiana Supreme Court decision 205 La. 340, 17 So.2d 349, page 352, the Court said:
If a person is required to perform an act within a given year and he does it before the end of that period, even on the last fractional second thereof, no matter how small, his efforts are timely.
Therefore, the last minute or second of the last hour of the tenth day calculated in accordance with Article 5059 must be given to the challenged voter to appear at the Registrar’s office and present his or her case.
And, again, the Court stresses that this is an error of computation and should in no way reflect upon Mr. Bankston’s ability, integrity or good faith.
*772 Por these reasons, the Court, for this particular prayer of the petition, which is number one, there are four to be dealt with, the Court makes the rule absolute and issues herewith a writ of mandamus directing the defendant to restore the voter registration and voting rights of all voters illegally removed from the registration records as a result of the notices mailed on July 14, 1986. Also, the Court, exercising the inherent power and authority of the Court, under Article 191, Code of Civil Procedure, directs the defendant to advertise these names appropriately, as were the names advertised when challenged, in the official journal of the Parish of East Baton Rouge on Friday, October 31 and Monday, November 3, 1986, as having been restored to the voting roles.
With regard to the issue of the Registrar’s office being closed on September 27, 1986, and the requested injunction “prohibiting and restraining the defendant Bank-ston from closing or locking or otherwise prohibiting voters from obtaining access to his office on November 4, 1986,” the Court notes that there has been a serious conflict in the testimony of many witnesses with regard to whether or not Mr. Bankston’s office “remained open from six o’clock A.M. until nine o’clock P.M. on election day as required by R.S. 18:134.” The Court finds the following facts to have been established by a preponderance of the credible evidence:
1. A uniform security guard from the Baton Rouge City Police Department placed a handwritten sign on the entrance doors of the courthouse building advising the public that the Registrar’s office was closed. He also verbally advised any inquiry of the same alleged fact.
2. The two front doors of the Registrar’s office on the second floor of the courthouse building were locked at least part of the period from 6 A.M. to 9 P.M. on September 27, 1986.
3. Because of the number of voters purged from the registration roles of the Registrar of Voters records of East Baton Rouge Parish, there were many irate voters who were either telephoning the Registrar’s office or personally appearing at the Governmental Building in an attempt to obtain an explanation from the Registrar as to why they were not being allowed to vote and then seeking to vote under protest by affidavit at the polling place.
4. There were staff members of the Registrar of Voters staff working in the Registrar’s office at all times between the hours of 6 A.M. and 9 P.M.
5. A state of considerable confusion existed all day on September 27, 1986, due to the great number of voters seeking to vote who had been removed from the voter registration rolls, which complicated this particular matter.
At the outset, the Court wishes to distinguish the instant case from the Flanagan v. Guste, 359 So.2d 686 (La.App.1978) case, which case is not applicable to the instant case because the Flanagan case speaks to a state officer, namely, the Attorney General, being enjoined from carrying out a duty, prescribed by statute and incumbent upon him to carry out because carrying out that duty might in some way have injured the plaintiff in that case, whereas in the instant case the plaintiffs seek to mandamus the defendant to perform his statutory duty.
It is well settled that an injunction or mandamus is a harsh remedy and is only available in those instances wherein the rights of a party seeking the injunctive or mandamus relief are not otherwise adequately protected by ordinary legal process. Amacker v. Amacker 146 So.2d 672 (La.App.1962) is one of the landmark cases establishing that proposition. The Court, therefore, will pretermit a determination of whether or not the Registrar of Voters office fully and adequately complied with the mandate of R.S. 18:134(E) on September 27, 1986 and, thus, will not issue a preliminary injunction relative to the November 4, 1986 election, since a mandamus and/or an injunction are extraordinary remedies and as Amacker says should be used only if there is no other adequate remedy and only in extraordinary cases, and sparingly. However, again, under the *773 authority of the Louisiana Code of Civil Procedure, Article 191, the Court exercises its inherent authority and hereby issues a protective order directing the defendant, Nat Bankston, to fully comply with R.S. 18:134(E) and in particular to keep the doors to the Registrar’s office open at all times and unlocked from 6 A.M. to 9 P.M. on November 4, 1986.
Rule No. 2, which was sought by the plaintiffs, why a preliminary injunction should not issue herein prohibiting and enjoining the defendant from illegally removing these same or additional voters prior to the November 4,1986 election, with respect to that particular Rule, this Rule to Show Cause is recalled, vacated and set aside, in view of the provisions of R.S. 18:135 which makes such a requested preliminary injunction moot as to the November 4, 1986 election.
Rule No. 4, that is, why a preliminary injunction should not issue herein enjoining and prohibiting the defendant from commencing or continuing any canvass or purge not conducted in strict compliance with the law, that Rule is also recalled, vacated and set aside as being premature, and no injunction will issue as prayed for in Rule No. 4.
At this point, it’s incumbent on the Court to mention the fact that the Clerk of Court’s office has communicated with the Court, advising the Court that it would be very pleased if the Court, according to the provisions of R.S. 18:221 and the other Court cost provisions of our law, assess court costs in this case, apparently we’ve run up a lot of costs, so the Court at this point will order that court costs are to be, will be assessed 50 percent to the plaintiffs and 50 percent to the defendants.
Judgment will be signed accordingly.