HERBERT A. CADE, Judge Pro Tem.,
dissenting in part and concurring in part in the result.
It is improper to defer in interpretation of a statute to an official whose position is appointive and whose authority under the statute is strictly ministerial and non-discretionary. The arbitrary and capricious standard of judicial review embodied in our Administrative Procedure Act, R.S. 49:964(G)(5), has no application to this case. Administrative adjudication is not challenged. Rather, this court is asked to interpret R.S. 18:191 and 18:192 and to determine whether the actions of the registrar comport with plain legislative command. This writer would not shirk that task.
Prior to 1986 section 192 set forth the registrar’s mandate as follows:
In each parish the registrar of voters shall annually canvass the names of the registrants in one-fourth of the precincts in the parish, so that all of the names of persons registered in each precinct shall be canvassed at least once every four years ...
Act 669 of 1986 put the section in present form. The purpose of amendment was “to provide additional requirements relative to canvassing of voters.” As amended section 192.A.(1) now provides that the canvass be conducted “[i]n January”. It readily appears that in imposing on the registrar this additional requirement the legislature sought to ensure that the annual canvass and subsequent purge take place sufficiently in advance of an election to avoid infringement on the right to vote, and to avoid undue burden on the registrar presented by mass last-minute reregistration. See Screen v. Bankston, 498 So.2d 770 (La.App. 1st Cir.), writ denied 496 So.2d 337 (La.1986); Reddix v. Lucky, 252 F.2d 930 (5th Cir.1958).
Such a construction is required not only because of the purpose recited in Act 669, but also because “these statutes mean exactly what they say,” Dumas v. Jetson, 462 So.2d 266, 270 (La.App. 1st Cir.1984), and because this construction is most consistent with the statutory scheme. Section 192.-A.(l) dispenses with the January canvass “commencing in 1990 and every fourth year thereafter [in] parishes and municipalities with a population of five hundred thousand or more,” coincident with February elections in those years. See R.S. 18:402.D. Section 110.C. permits a registrant to vote in the parish of registration despite having moved to another parish within three months of an election. This writer submits that Section 192.A.(1), which on its face requires that canvassing be conducted in January, would not be read to permit the registrar to canvass and purge voters in July whose right to vote in October is specifically preserved by section 110.
The majority suggests the registrar commenced to canvass January 27, 1987 by requesting canvassing cards. In my view the registrar has discharged his duty to conduct the canvass “in January” only if the cards have been mailed to all voters in the targeted precincts during that month.[1] I would not read this section to require that all cards mailed in January be returned to the registrar in January, because the date of return is beyond the registrar’s control, nor for the same reason would I read it to require that the purge be completed in January. The statute is clear as to what must be done when the cards are returned, however. The registrar “shall immediately notify” the registrant of “alleged irregularity in registration or the reason for the loss of the right to remain registered.” Id., § 193.A. Subsection B continues:
When six or more names have accumulated, or in any event not later than five days after mailing the notice, the registrar shall publish the names of all registrants to whom the notices have been sent, together with a notice requiring them to appear in the registrar’s office within three days after the publication and prove the correctness of their registration.
*1196 A fair reading of the statute thus requires the initial mailing in January, notice “immediately” upon return of the card, which may or may not be in January, and publication within five days of mailing of notice. So long as the registrar adheres to this schedule the statutory requirements are met.
These requirements require strict and literal adherance. As Judge Tuttle wrote nearly thirty years ago:
... it can hardly be gainsaid that before a registered voter can be summarily denied the right to vote because of some alleged disqualification the statutory procedures must be strictly adhered to.
Reddix v. Lucky, 252 F.2d at 935 (footnote omitted). Just as a purge is invalid where a challenge brought by two registered voters to the qualifications of a third is not executed before the registrar as required by statute, or where notice of such challenge is not mailed “immediately or within 48 hours as required by the statute,” or when publication is effected within ten days but not within “five days after mailing the notification,” see id., at 935-38; and just as a purge is invalid where a citation issued by the registrar allows a challenged voter only nine days rather than until “the last minute or second of the last hour of the tenth day ... to appear at the Registrar’s Office and present his or her case,” see Screen v. Bankston, 498 So.2d at 771-72; because the requirements of section 192.A.(1) were not met by the February mailing the purge should not now be allowed to proceed.
It is no answer to claim, as the registrar has before this court, that he has no choice but to comply with the satutory directive by completing the purge at the present time.[2] Several legislative directives are contained in section 192. The first is to conduct a canvass in January. This has not been heeded. The purpose of this directive will be thwarted if the purge is conducted prior to the election, but will be given effect despite the registrar’s noncompliance with the statutory language if the purge is postponed until after the election. The second directive is that the rolls of one-fourth of the precincts in Orleans Parish be purged annually such that the rolls in all the precincts in Orleans Parish will have been purged once in four years. This requirement is statisfied so long as the purge is completed by the end of the year. In my view we should enjoin completion of the purge until after the election to achieve both purposes of the statute.
Although I fail to see the urgency in proceeding with the purge of registrants who have not voted in the previous four years, where in 1986 there was no urgency and no purge was conducted pursuant to section 191, in this respect I am constrained to agree the judgment of the trial court should be affirmed. Section 191 does not require a convass in January. Reference in section 191.B.(2) to section 192 was deleted well before the January canvass requirement was inserted in the latter section. See Act 229 of 1979. Absent such express limitation this section appears to impose on the registrar a continuing obligation in which we ought not interfere.

. This is a reasonable inference drawn from section 192.A.(2), which in pertinent part provides: ‘In conducting the canvass the registrar shall mail to each registrant in the precincts to be canvassed a card on which is plainly typed or printed the registrant’s name and address, and his ward and precinct number.

. In making this contention the registrar relies upon an opinion of the Louisiana Attorney General which failed to consider that the canvass was not begun in January. Under any circumstances an opinion of the Attorney General is advisory; where operative facts are not considered in the opinion its value is doubtful.