694 So.2d 358 (1996)
A.F. "Sonny" ARMOND, et al.
v.
Jerry M. FOWLER, Commissioner of Elections, et al.
No. 96-CA-398.
Court of Appeal of Louisiana, Fifth Circuit.
November 26, 1996.
Arcenious F. Armond, Jr., Gretna, for Plaintiff/Appellant A.F. "Sonny" Armond, et al.
*359 G. Michael Grosz, III, Peyton B. Burkhalter, Gretna, for Defendant/Appellee Senator Francis Heitmeier.
Before DUFRESNE, CANNELLA and DALEY, JJ.
DALEY, Judge.
A.F. "Sonny" Armond, plaintiff, appeals the trial court judgment awarding sanctions to defendant, Francis Heitmeier, relative to an election suit filed by Armond on behalf of himself, six other named individuals and the Jefferson Parish Republican Executive Committee. Armond was cast in judgment in favor of Heitmeier in the amount of $2,500.00 plus costs under Code of Civil Procedure Article 863. Armond appeals. Heitmeier answered the appeal seeking an increase in the trial court award from $2,500.00 plus costs to the actual billing from his counsel of $9,065.00 plus costs. Heitmeier also seeks additional fees and costs for this appeal. For the reasons that follow, we affirm the trial court judgment and deny the relief requested by Heitmeier in his answer to the appeal.
Armond filed suit on his own behalf and on behalf of Lynn Cheramie, Danny Lamonte, Don James, Susan Bernecker, Robert Namer, Bobbie Ragsdale and the Jefferson Parish Republican Executive Committee contesting numerous state and local elections. Named as defendants were Jerry Fowler, Commissioner of Elections, W. "Fox" McKeithen, Secretary of State, Edwin Lombard, Clerk of Court for the Parish of Orleans, Jon Gegenheimer, Clerk of Court for the Parish of Jefferson, Joseph Toomey, T.J. "Butch" Ward, Francis Heitmeier, The First District Team, B.H. Miller, individually and in his official capacity as Chief of Police of the City of Gretna, Nick Giambelluca, Ann Marie Vandenweghe and John Laverine. Of the defendants, only Joseph Toomey, T.J. "Butch" Ward, Francis Heitmeier, Nick Giambelluca, Ann Marie Vandenweghe and John Laverine were candidates in an election.
Armond filed a fifteen page PETITION TO CONTEST ELECTION making numerous allegations in seventy paragraphs surrounding the election of October 21, 1995. The petition read as a whole suggests that various defendants and other nonparty conspirators sought to control the outcome of the October 21st election by engaging in allegedly illegal campaign activities including, but not limited to threats against supporters of opposition candidates. The petition also alleges that the voting machines operated improperly making the outcome of the election indeterminable. Before the start of trial, the Intervention by Bobby Ragsdale was dismissed with prejudice because it was filed too late. The Jefferson Parish Republican Executive Committee was dismissed because they are not a proper party plaintiff under LSAR.S. 18:1402. Mr. James voluntarily dismissed his suit against Mr. Toomey. Of the seventy paragraphs in the petition, fifty were ordered stricken by the trial court as not relevant to an election contest. These allegations generally related to conduct that would be considered electioneering subjecting those guilty to prosecution by the State. Thereafter, Armond was allowed to orally amend his petition to allege any facts he deemed necessary to proceed with the action. Armond's oral amendment expanded on the remaining allegations concerning voting machine problems.
The only witnesses who testified concerning mechanical or computer problems with the machines were plaintiffs, Susan Bernecker and Robert Namer. Ms. Bernecker inspected some machines in the warehouse after the election and took video tape pictures of her tests. The video shows as she selected a candidates name, a different candidate's name would sometimes show up in the liquid crystal display, L.C.D. Mr. Namer testified that he experienced some problems using the new voting machines, but the problems did not adversely affect his right to vote. He also related similar problems experienced by callers to his radio show. Basically, these "problems" occurred when a voter would select a candidate in one race then press the vote button instead of making all of their selections before pressing the vote button. The vote was then registered after one selection and the voter was unable to vote for any of the other items or candidates on the ballot. This constitutes voter error not machine error.
*360 Armond called Phil Foster, the salesman who sold the machines to the parish, as a witness. He testified he was unaware of any problems with the machines; explained the different modes available for the machines; and explained that the unusual performance of the machines evidenced by Ms. Bernecker's video, (Exhibit P-1) was a result of the machines being in a non-voting mode. No other witness was called to testify regarding problems or defects in the voting machines. No voter testified that the machines did not correctly display their selection during voting. No voting machine expert, computer expert or technician was called to testify concerning any defects in or problems with the voting machines.
Armond also called Jon Gegenhiemer and his Deputy Clerk, Donald Conino, who both testified they were not aware of any problems with the voting machines. Gegenheimer testified he was unfamiliar with the manner in which the machines worked, but noted after the election some voting machines at the east bank warehouse did indicate a different voter than the voter selected. However, this was attributed to the fact the machine was in the non-voting mode.
Section 1433 specifically addresses voter machine malfunction. The statute provides for a revote in precincts where voting machine malfunctions occur and the result otherwise could not be determined. Remedies available to a candidate in an election contest are provided for in Section 1432 which provides as follows:
A. If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of election, or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) herein would have been sufficient to change the result had they not occurred, the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates, or, if the judge determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a restricted election, specifying the date of the election, the appropriate candidates for the election, the office or other position for which the election shall be held, and indicating which voters will be eligible to vote.
Section B provides that if the trial judge finds the election contest was filed frivolously, attorney's fees, court costs and damages may be awarded to the defendant.
Armond failed to present any expert testimony concerning the alleged problems associated with the voting machines. The only testimony presented was clearly insufficient to warrant a judgment overturning the election. Many allegations of the petition were irrelevant in an election contest and were properly stricken by the trial judge. Additionally, parties plaintiff and defendant were included that were not proper parties under the election code. These parties were properly dismissed by the trial judge.
Title 18 of the Louisiana Revised Statutes set forth the Louisiana Election Code. Section 1402(B) of the election code provides the proper parties to an election contest are the candidates themselves, the Secretary of State and the commissioner of elections insofar as the judgment affects the latter two's ministerial duties. Section 1405(B) provides all contests involving elections to office shall be filed on or before the ninth day following the date of the election.
There was no evidence introduced at trial that qualified voters experienced problems with the voting machines or that voting machine malfunction while the polls were open resulted in a discrepancy sufficient to change the results of the election. LSA-R.S.18:1433. There was no competent evidence questioning the validity of the voting machine results. Thus, the trial court properly *361 refused to overturn the results of the election.
Open and free elections are a hallmark of our society. We must strive to keep elections open and encourage people to bring valid election contests to help assure free and honest elections. However, we cannot condone actions brought which tend to harass others because of the failure to investigate facts, the law and then the failure to properly present a case. In the trial court's Reasons for Judgment the court noted that the plaintiffs failed to prepare and present a case. It appears from our review of the entire record that plaintiffs raise allegations in their petition and expect the court to conduct an investigation into the alleged theory of electronic voting machine malfunction or manipulation. Absent proof of electronic voting machine malfunction or manipulation the court has no authority to invalidate an election.
Among the factors to be considered in determining whether a reasonable factual inquiry required of a litigant and their counsel has been made in order to determine the appropriateness or inappropriateness of sanctions include the following:
1. Time available to the signor or investigation;
2. Extent of the attorney's reliance on the client for factual support for pleadings;
3. Feasibility of prefiling investigation;
4. Whether the signing attorney accepted the case from another attorney;
5. Complexity of factual and legal issues;
6. The extent to which development of factual circumstances underline the claim required discovery.
Penton v. Clarkson, 633 So.2d 918 (App. 1 Cir.1994).
Clearly the short time frame imposed on filing any election challenges does not provide adequate time to engage in thorough discovery or extensive fact finding. Inability to adequately investigate prepetition, however, is no excuse for failure to present evidence in support of one's petition at the trial. All voting machines were shut off and out of election mode when the video tape was taken. While the machines in this mode appear to be malfunctioning the only witness called, Mr. Phil Foster, a representative of the company that manufacturers the machine, did not support the allegations of plaintiff's petition and testified that when the machines were in the off or out of election mode, they would not necessarily function properly.
Based on the lack of evidence presented to the trial court of improprieties or irregularities in the election, sanctions were assessed against Armond in the amount of $2,500.00 plus costs. A trial court's determination of whether to impose sanctions will not be reversed unless it is manifestly erroneous or clearly wrong. Harris v. Gaylord, 647 So.2d 542 (La.App. 2nd 1994). The case of Dumas v. Jetson, 462 So.2d 266 (La.App. 1 Cir.1984) deals directly with sanctions imposed in an election dispute. The Court in Dumas looked to the factual findings of the trial court with regard to allegations made in the Petition to Contest the Election and noted that there was no evidence to support the various allegations made by the plaintiff. After reviewing the record in the instant case, we find the trial court's factual finding that the lack of evidence presented supports an award of sanctions is not clearly wrong. See Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Dumas v. Jetson, supra.
Once the court determines that sanctions are appropriate the trial court has considerable discretion as to the type and severity of sanctions to be imposed. Borne v. New Orleans Health Care, Inc., (App. 4 Cir.1993), 616 So.2d 236, writ denied 623 So.2d 1332. We also find no abuse of discretion by the trial court in limiting the award of sanctions to $2,500.00 plus costs and affirm said judgment. It is apparent the trial court chose not to impose severe sanctions in this case. However, because of the numerous allegations which had no place in an election contest, the numerous plaintiffs and defendants who were improper parties and the lack of evidence of voting machine error, the trial court properly assessed a reasonable sanction of $2,500.00 against Armond.
Heitmeier has asked for additional attorney's fees for work on this appeal. We *362 find the amount of sanctions awarded is reasonably subject to dispute supporting the right of Armond to appeal. Id. Therefore, we refuse to award Heitmeier additional damages because Armond has filed this appeal.
Accordingly, for the reasons assigned, the judgment of the trial court is affirmed. The relief requested in defendant's answer to the appeal is denied. All costs are to be borne by plaintiff.
AFFIRMED.