801 So.2d 1217 (2001)
Susan E. GOLDBACH, Wife of Ronald Atchley
v.
J. Ronald ATCHLEY.
No. 01-CA-616.
Court of Appeal of Louisiana, Fifth Circuit.
November 27, 2001.
Rehearing Denied January 14, 2002.
*1218 André P. Guichard, New Orleans, LA, Counsel for Robert T. Garrity, Jr. and Richard E. Anderson, Defendants in Rule/Appellants.
John V. Baus, Jr., Jennifer C. deBlanc, Baus, Hammond & Daly, L.L.P., New Orleans, LA, Counsel for J. Ronald Atchley, Plaintiff-in-Rule/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
This matter arises out of a community property partition between Susan E. Goldbach Atchley and J. Ronald Atchley. Ronald Atchley's sister, Mary Lou Atchley, intervened in the partition proceedings to assert rights to bearer bonds in Ronald Atchley's possession that she alleged were part of their late father's estate.[1] The intervention was dismissed in March 1997 and the dismissal was affirmed by this Court on appeal. Atchley v. Atchley, 97-474 (La.App. 5 Cir. 1/14/98), 707 So.2d 458.
After the intervention was dismissed, Ronald pursued a motion for sanctions against Mary Lou's attorneys, Robert Garrity and Richard Anderson, for the "frivolous, harassing and delaying nature of intervenor's actions." Subsequently he filed a motion for additional sanctions against Garrity and Anderson for failure to appear at a hearing. On April 25, 2000 the trial court cast Garrity and Anderson in judgment for failure to appear on a scheduled court date and ordered that they pay Ronald Atchley $1,700.00.
*1219 On appeal, however, that award was vacated by this Court. Atchley v. Atchley, 01-67 (La.App. 5 Cir. 5/30/01), 788 So.2d 690. We held that the only authority for such an award is through the trial court's contempt powers and that the trial court erred in failing to follow proper procedures for a contempt rule, imposing a fine in excess of the amount authorized by law, and in making the fine payable to the opposing party rather than to the court. Id.
Now before us is a judgment rendered October 18, 2000, in which the trial court granted Ronald's Motion to Dismiss Intervention, denied Ronald's Motion for Sanctions, and ordered Garrity and Anderson pay all court costs incurred in connection with the petition for intervention filed on behalf of Mary Lou Atchley.[2]
Ronald Atchley appealed; Garrity and Anderson cross-appealed.
On appeal Ronald contends the trial court erred in failing to find Garrity and Anderson in violation of La.C.C.P. art. 863, in applying a subjective standard, and in failing to award sanctions for Ronald's reasonable attorney's fees in defending against the petition for intervention.
On their cross-appeal, Garrity and Anderson argue the trial court erred in taxing them, as intervenor's counsel, with the court costs for the intervention.
Ronald sought dismissal of the intervention on the ground that the property his sister was seeking to recover could not have been property of his marital community, because it was bearer bonds alleged to have been part of his father's estate. He argued the bonds clearly were separate property as part of an inheritance and not part of his marital community, especially because Ronald and Susan did not marry until several years after his father's death.
Ronald also contended that his sister and her attorneys had violated a protective order the trial court had issued prohibiting release of information concerning Ronald's community finances. In addition, he asserted that information sought by Garrity and Anderson during discovery was irrelevant to the subject matter of the intervention, but rather was aimed at attempting to establish that Ronald was either violating federal and state tax laws or was violating ethical procedures for securities traders (his profession).

FACTS
The hearing on the motion for sanctions took place over three separate days-June 23 and August 25, 1999 and April 10, 2000.
Robert Garrity testified that in filing the intervention they were trying to establish "forensic accounting-a method or pattern showing excessive amounts of cash and where they came from," which he likened to federal prosecutions of bank and homestead officers for stealing treasury bonds. Garrity admitted, with respect to his examination of a domestic employee who cared for Ronald's elderly invalid mother,
We were trying to establish a pattern of everybody's paid in cash, no taxes are paid on them, the people aren't declaring the taxes, there are no social security earnings paid on them. That's where we were going, because we were trying to tie this in with the money being drawn off of these bearer bonds.
Garrity also admitted he questioned the domestic employees regarding how they were paid, whether taxes or Social Security *1220 contributions were withheld, whether the employees received tax forms, whether they filed tax returns, and whether they had other sources of income such as welfare. Garrity denied any of these discovery actions were taken to harass employees of Ronald or his mother. Asked what relevance these inquiries had to determining whether the bonds alleged in the petition for intervention had anything to do with the community property, Garrity stated,
We were trying to trace cash and we were trying to trace payment that may have come from the estate. Specifically, other questions were asked in there about her doing work for Mr. Atchley and it was our belief that Mr. Atchley was using these funds that we believe were spirited from his father's estate to pay this domestic help. We were trying to track it.
Garrity said further, in discussing statements he made to the trial court in arguing Mary Lou's motion for permission to intervene,
[T]he allegations I made to the court for the intervention on behalf of Mary Lou is that Mr. Atchley said in his deposition that there were bonds that were not run through his father's succession. And in an attempt to show the court that this was a wheeler-dealer-this was a person who would have done that type of thing, we brought our other evidence from his deposition to show the court that he did not always strictly adhere to the practice or strictly adhere to the laws that were required in his profession. And for which he has also sued us for defamation.[3]
Garrity acknowledged that after taking discovery he realized there was no basis for the claim in the intervention proceeding:
We couldn't track anything. We couldn't track the bonds, we couldn't match up the cash that we were looking for with these household employees with the bond money, we could not-at some point he gave us-he gave a second deposition in which he went in and listed out bonds that were not listed the first time. And after that, we reached a dead end. We could not prove our case.... I believe my statement was we could not prove our case after completion of discovery.
* * *
The reason why we intervened is because we thought, and we knew, that there was a claim by Susan Atchley for the bonds. And if this Court made the determination that the bonds were separate property, then Mary Lou had a claim in a separate proceeding. And that is, in reopening the succession for that money.
Garrity admitted that he had previously represented Mary Lou on charges arising from her controlled substance abuse problem, specifically arrests for selling prescription narcotics. He also admitted that during his representation of her, she continued to abuse drugs from time to time and, during those periods when she was using drugs, she may not have been in a position to make decisions.
He denied, however, that the decisions concerning the intervention were made by *1221 him and Anderson. He stated they made no decisions whatsoever when they were able to determine that she was "hitting the narcotics again."
Garrity testified he began representing Mary Lou Atchley in 1994 or 1995 and that "representing Ms. Atchley has been a career opportunity." He said Anderson had represented Mary Lou prior to Anderson's renting office space from Garrity and that he asked for Garrity's assistance in Mary Lou's dispute with her brother over management of her trust. Later Mary Lou engaged him to assist Anderson to have her brother and another trustee removed as trustees of another trust. Garrity also was retained by her separately to represent her on a criminal charge.
Garrity stated that when he first met Mary Lou, she was "extremely bright, very perceptive ... had an extremely sharp dry wit"; she "appeared to be a normal person." Over the course of several years as he represented her, however, it became "blatantly obvious" when she was going through periods of addiction to drugs. She "would go for several months as a perfect human being," then go for several months "completely off the deep end and then straighten herself back up." Garrity commented this was a recurring pattern.
Garrity stated that, based on the information they obtained, they "would have been guilty of malpractice" had they not filed the petition of intervention. They had Ronald's sworn testimony that he did not run bonds through his daddy's succession and he was the executor of the succession." In addition, Garrity said, "We had evidence of ... his dealings as a stock broker which ... conduct would have to be called into question. And he was the guy administering her trust." They felt that Mary Lou had a claim to the bonds and they were concerned that if the bonds were ruled to be community property, "she would be out."
Garrity described the relationship between Mary Lou and Ronald as "bitter to say the least. Outright hatred would have been a real good word.... He had exclusive control over everything she owned, and she despised him."
In Garrity's opinion, on the date they filed the intervention, Mary Lou was competent to authorize them to file it. He stated,
She was clear-headed. She was able to sit and discuss everything that was going on and provide input as to what was going on, and yes, she knew exactly what we were doing and she knew exactly why we were attempting to do it, and that is to make a claim for her for those bonds.
Garrity pointed out that there was a contradictory hearing on the motion to file intervention, that Mary Lou was present at the hearing and represented by himself and Anderson, that the court granted permission to file the intervention, that counsel for Ronald advised the court of intent to apply for supervisory writs, but the request for writs later was withdrawn.
Garrity admitted he was aware that bonds inherited from one's parents are considered separate property, but stated there may be some situations where there is commingling of funds and "that kind of stuff." However, he said, the corpus should remain separate property. He commented, "I'm often chastised by the Court that I don't properly appreciate the law."
Garrity also admitted that he took no depositions of certain persons whom he had mentioned as being sources of information about Ronald's alleged conversion of the bonds-specifically, Susan Atchley's attorneys, Susan herself, and Ronald's secretary. *1222 Garrity testified some information was from an audiotape made by Susan recording a conversation between her and Ronald; however, Garrity admitted that Mary Lou's submission to the court-appointed Special Master in the partition suit contained no reference to the audiotape. Garrity stated, however, that Ronald's deposition testimony tracked what was said on the audiotape.
Garrity asserted that as a result of the intervention and all the other lawsuits,
Mary Lou got everything she asked for. She had her trust separated from her brother. She no longer had to kowtow to him to get anything. She had a trustee that was an independent person managing her trust. And she had a bank of substantial assets controlling her trust and making decisions that would be in her best interest rather than in the best interest of her and her brother, since his tax situation was substantially different from hers. And she gets a monthly income, which she did not have before.
Garrity testified further that Mary Lou's legal fees for all the work performed by him and Anderson totaled $330,000, which he said worked out to about $35 an hour.
Richard Anderson testified he shares office space with Garrity and that his law practice largely falls into the areas of federal income, state and gift taxation and civil fraud actions. He stated the purpose of the intervention was to protect Mary Lou's interest in the bearer bonds that her brother had admitted taking from her father's succession without running them through probate.
Anderson related that Mary Lou first consulted him in the spring of 1995 regarding her suspicions concerning her brother's handling of their father's estate. She gave him the names of a couple of people whom she said had given her informationRonald's ex-wife and his former secretary. Anderson decided to represent Mary Lou after he developed enough information to support her allegations. He was aware that Susan "had an axe to grind with her ex-husband and was assisting Mary Lou... in large part, out of revenge." He stated,
Susan Atchley agreed to assist Mary Lou through me and provide us information and assistance. It was always clear that it was every man for himself. And what I mean by that is Susan Atchley was going to make a certain claim for the bonds and we were going to make a claim-she was going after as much money as she could get and we, right from the beginning, said if we're making a claim for the same thing, it's not a matter that we're going to divvy this up and you're going to get this. If we're both making a claim for the same thing, then let the best person win. I think her point was whether those are Mary Lou's or for me, I don't [want] Ronald to get them.
Anderson admitted that at the time of Ronald's deposition in November 1995, he mentioned to Susan some areas that he would like her to go into and that he thought it would be important for her counsel to ask at that deposition. The day after the deposition Susan called him and reported information that would be useful for Mary Lou's cause related to the bonds.
Anderson testified that decisions regarding the pleadings that would be filed for discovery were made by him and Garrity, with input from their client. They had represented Mary Lou in large part on a contingency fee basis; therefore, they "had no financial incentive" to take needless depositions because they were fronting the costs as well as the time. *1223 Anderson stated that Garrity acted as "the mouthpiece" between the two of them.
Anderson admitted he knew that Mary Lou had a substance abuse problem and that she had sought assistance. When he met her she was barely able to take care of herself, which is a reason he was reluctant at first to accept her as a client. However, she "seemed to have resurrected herself." While he was representing her she was arrested for selling and using drugs.
Anderson testified they had a contingency fee contract with Mary Lou to handle the matters concerning her interests in the trusts. He estimated the final fee ended up being about 28 percent in contrast to their usual contingency fee of between 33 and 40 percent. He stated that Susan Atchley furnished him with information regarding financial transactions by Ronald that Anderson felt gave the appearance of efforts to avoid mandatory IRS reporting requirements. He also obtained information indicating that Ronald was hiding bonds from his sister. Anderson based the decision to intervene in this lawsuit on the combination of information he had obtained.
Anderson stated further that he had authority from Mary Lou to file the intervention, that the investigation was authorized by her, and it culminated in an employment agreement that called for a payment for past work, at a reduced contingency rate, with Mary Lou to bear the costs and to pay him on an hourly basis for the investigation, which sums were credited against the contingency fee amount.
Anderson testified he believed there was a reasonable basis that his client, Mary Lou, had a 25 percent claim to bonds that were omitted from her father's succession and that may have been in a bank box belonging to Ronald. He based this on pleadings from the community property partition, reviewed in conjunction with pleadings in the father's succession. He believed it would be malpractice not to file an intervention in the community property proceeding.
Anderson admitted he had referred Mary Lou to a doctor who specialized in treating abused women who suffer from either alcoholism or drug addiction.[4] Anderson felt, based upon her educational background and her life experiences and the amount of money involved, it would have been inappropriate for her to manage all her own money. During most of the period in which he had an attorney-client relationship with her, however, she "seemed to do all right." The intervention was filed to protect Mary Lou's interest from claims by Ronald's ex-wife for certain bonds. He said, "If Susan Atchley had made no claim for those bonds, then there would have been no need to intervene and the matter could have been dealt with in a separate suit."
Anderson stated that prior to filing the intervention they tried to get a copy of Ronald's deposition, both by filing the direct action in the 25th Judicial District and by filing a motion in these proceedings. However, Ronald's counsel told them they had to intervene before they could do that. They intervened to have a procedural device to obtain discovery.
Anderson stated they also relied on the sworn descriptive list filed by Susan in these proceedings, which lists "one-half of the bonds delivered out to JRA from community accounts during the existence of *1224 the community property regimes and unaccounted for at the termination of the community," totaling approximately $235,000.00. Susan was making a claim for half that amount. The list showed no account numbers for the bonds. Subsequently Susan filed an amended sworn descriptive list that reinforced Anderson's view that she was claiming an interest in bonds in which Mary Lou may have had an interest.
Mary Lou Atchley testified that Anderson and Garrity represented her in the intervention proceeding. She acknowledged she had just completed a drug rehabilitation program at the time of the hearing and denied currently being under the influence of any substance. She admitted that when she first went to see Anderson, she was taking 20 to 30 pills a day, and that she continued that level throughout their representation of her in the intervention. She said she was told the purpose of filing the petition for intervention was to get her brother's deposition in order to find out whether he had stolen some bonds. She admitted it was discussed with her that another purpose of filing the intervention was to discredit her brother. She said her knowledge of the bonds came from her sister-in-law, her attorney, and her brother's secretary. She acknowledged that the information in the intervention petition came mainly from her attorneys and other parties rather than from her.
Mary Lou testified her attorneys made the decisions as to what discovery to take. She admitted that during the course of the intervention proceedings, she was arrested for distribution of drugs. She also admitted she had asked her attorneys to store drugs for her, because she had just been arrested and didn't want to be arrested again.[5]
Mary Lou stated she hired Richard Anderson because she thought her brother was stealing from her personally and her mother and she didn't think he was treating her fair. She thought there was a conflict of interest in his being a trustee for her trust. From 1993 until 1997 her relationship with her brother consisted of animosity and no communication. She did not communicate her suspicions to Ronald, but was led to believe he was taking funds by Ronald's ex-wife and his secretary.
On questioning by the court, Mary Lou stated that from 1982 until 1991 she was in 20 different rehabilitation programs. When she first met Anderson she was taking 20-30 pills of codeine and barbiturates per day. She had just completed her most recent rehabilitation program two months prior to the hearing.
Ronald Atchley testified that Mary Lou Atchley brought several suits against him in addition to the intervention in this case. He and two other persons were trustees of trusts of which Mary Lou was beneficiary. He identified petitions in several matters filed on behalf of Mary Lou against him:
1. A petition seeking an accounting and distribution of trust assets:[6] Ronald testified that the court appointed an auditor who found no wrongdoing. The dispute was settled and the assets of the trust were distributed to Mary Lou when she reached 35 years of age, which was the termination event for the trust.
2. A petition in Plaquemines Parish (where Ronald resided), to require *1225 Ronald to account for and pay to the John R. Atchley Testamentary Trust assets allegedly converted and/or omitted from their father's estate:[7] Ronald said that suit eventually was dismissed because their father had never been a resident of Plaquemines and the proper place for the suit was Orleans Parish.
3. A motion to modify a protective order in this matter, filed on June 18, 1996, followed by Mary Lou's petition for intervention ten days later.[8]
4. A petition to reopen their father's succession in Orleans Parish:[9] According to Ronald, that suit also was dismissed.
5. A petition to remove trustees and appoint successor trustee, seeking removal of Ronald and the other trustee of Mary Lou's personal trust:[10] Ronald testified that the court appointed two provisional trustees, who investigated and determined there were no funds missing and no cause for removal of the trustees. Ronald said that during the course of that litigation, his and Mary Lou's mother died. Consequently, the suit was settled, his interest in the trust property was terminated, his share was distributed to him and he resigned as trustee.
Further, Ronald identified invoices for his legal fees from his counsels' law firm, totaling $61,439.17.
On cross examination Atchley was asked about his testimony in a November 1995 deposition relating to the community property partition. He admitted that, on being asked whether certain assets he had acquired had all gone through the succession, he said "for the most part." He admitted he then testified, "There were some bearer securities that didn't go through that succession."
The final witness was Frank P. Tranchina, Jr., who represented Susan Atchley in the community property partition. He reviewed the joint detailed descriptive list and said that property listed as community on it included bonds delivered out to Ronald during the existence of the community, but listed account numbers for those bonds. Tranchina stated he listed unknown bearer bonds on the original list in case there was a bond or an asset that was deemed community that he had missed.
In connection with the proceedings Tranchina froze two accounts and conducted an inventory of one bank box, but he did not find anything that belonged to the community. He was holding on to the "catch-all" in case something surfaced prior to trial. When Ronald established that the bonds were issued prior to his marriage to Susan, Tranchina knew they were not community. He stated they still could have been someone else's property, but his only concern was to be sure they didn't belong to the community and weren't Susan's property.
Tranchina stated he knew his client spoke to Mary Lou and that they were aligned with her early on, but he did not *1226 know what his client told her. His client did tell him that she thought Ronald had some bonds that belonged either to his father's estate or to the mother or that didn't go through the estate.

TRIAL COURT'S RULING
As noted above, the trial court ruled on October 18, 2000, denying the motion for sanctions, but directing that Anderson and Garrity "pay all Court costs incurred in connection with the Petition for Intervention filed on behalf of Mary Lou Atchley." In written Reasons for Judgment filed with the judgment, the court found, in pertinent part:
La.C.C.P. Article 1091 provides a means [by] which one who claims a justiciable right related to the object of a pending action may intervene therein to enforce that right. In her petition Mary Lou Atchley claimed that her brother had breached his fiduciary duty as co-executor and trustee of her late father's estate by converting certain bonds which she claims belonged to that estate. As such she claimed to have had an interest in the outcome of the divorce proceedings and community property proceedings before this Court. There was in fact a question whether certain bonds were community property, separate property, or neither, e.g., succession property.
The court found the case had complex facts due to the nature of the circumstances from which Mary Lou Atchley's claims evolved. First, the court pointed out that Ronald is a stockbroker/financial analyst and that his work experience gave him a superior knowledge of financial transactions, stocks, bonds and securities. In contrast, Mary Lou has suffered for years from substance abuse and addiction. Nevertheless, the court stated, Mary Lou appeared to be "a reasonably intelligent and coherent individual" and, "although her state of mind comes into question during the pendency of this and other litigations ..., there is nothing in her testimony which indicates that she was unaware of what she was attempting to accomplish." The court noted, in particular, that "she at no time indicated that she felt taken advantage of or manipulated by her attorneys."
The court believed that any suggestions to Mary Lou of improprieties on Ronald's part may have come from Susan and that, due to her substance abuse, Mary Lou's "need for financial support may have substantially outweighed her means and thus further fueled the belief that her brother was depriving her of funds." The court concluded, "These motivations, coupled with the eagerness of her attorneys who were aware of her existing and possible future resources and her willingness to pay their fees, are in all likelihood what led to the filing of the intervention and discovery excursions."
The court stated that the nature of the matter required that all paper and money trails be examined, which revealed that although Ronald had committed "no breach of fiduciary obligations," he "had acted improperly in other areas directly related to his employment within a brokerage firm and regarding his management of bond coupons which may or may not have been a part of the succession." In addition, the court pointed out, it was discovered during trial that Ronald had in fact received funds from a third party that he kept in his personal brokerage account for that party, which the court found suggested "a pattern of behavior by Mr. Atchley that would raise suspicions if they were discovered by Mary Lou Atchley's attorneys."
The court determined,

*1227 As a result of these findings the Court must conclude that the financial dealings of Mr. Atchley relative to the community property issues, the succession issues, his separate property, as well as the funds he held for a third party, could in fact raise the suspicions of an astute attorney. Although this Court does not condone those tactics used by Mary Lou Atchley's attorneys, it cannot, under the applicable statutory provisions, find sanctionable grounds. However, in consideration of court costs expended by J. Ronald Atchley in defending against the Petition for Intervention, this Court is of the opinion that he is entitled to recover those court costs.

APPEAL BY J. RONALD ATCHLEY
Ronald makes the following assignments of error: The trial court erred in failing to find Robert Garrity and Richard Anderson in violation of La.C.C.P. art. 863; the trial court erred in applying a subjective standard in reviewing whether sanctions are appropriate under La.C.C.P. art. 863; and the trial court erred in failing to award sanctions to J. Ronald Atchley for his reasonable attorney's fees in defending the frivolous petition for intervention, pursuant to La.C.C.P. art. 863.

1. The trial court erred in failing to find Robert Garrity and Richard Anderson in violation of La.C.C.P. art. 863.
Ronald contends that most, if not all, of the pleadings signed by Garrity and Anderson in the intervention proceeding were designed to harass Ronald and/or incur additional legal fees on behalf of Mary Lou, in an effort to recover those funds from her trust. Specifically, he points out the following:
a. Filing a motion in a proceeding in which the mover is not a party:
By this Ronald refers to the ex parte Motion to Modify Protective Order they filed on behalf of Mary Lou on June 18, 1996, attempting to change the protective order entered between Susan and Ronald, which prohibited release of information about the parties' finances. Ronald contends the trial court signed the order in the belief that Mary Lou was Susan Atchley and that Susan was no longer in agreement with the protective order. The court vacated the order as soon as counsel for Ronald brought the error to the court's attention.
b. Filing a petition for intervention in the community property partition proceeding between Ronald and Susan: As noted above the intervention was dismissed by the trial court on an exception and the dismissal was upheld by this Court on a prior appeal. Ronald contends the intervention was frivolous from the outset because Garrity and Anderson had sufficient objective information available to establish there was no basis to intervene.
c. Discovery pleadings: Ronald argues that the discovery conducted after the intervention was filed was harassing and clearly provided no information on community claims, so that the discovery pleadings were another violation of Article 863.

2. Whether the trial court erred in applying a subjective standard.
The trial court stated that Ronald's financial dealings could raise the suspicions of an astute attorney. Ronald contends that, while suspicions could be raised that there was some claim to be made by Mary Lou in connection with the succession, there is no evidence to raise any suspicion *1228 that there was a community claim for the bonds allegedly taken from the succession in 1981. Ronald asserts the court was looking at whether there was an objective basis for any claim, rather than whether there was an objective basis for believing there was a community claim for the assets Mary Lou was seeking. Ronald argues, "In light of the definition of community and separate property, the time of the succession, the time of the marriage, and the testimony at trial, objective reasonable belief is not possible."
Ronald also points to the court's comment in its reasons for judgment that Mary Lou's motivations combined with her attorneys' awareness of her existing and possible future resources and her willingness to pay their fees "are in all likelihood what led to the filing of the intervention and discovery excursion." He contends that statement by the trial court is a finding of improper motive and intent in filing the petition for intervention sufficient to satisfy the requirements of Article 863.

3. Whether the court erred in failing to award Ronald sanctions consisting of reasonable attorney's fees for defending against the intervention.
Ronald asserts that the above-listed items demonstrate a violation of Article 863 that entitle him to attorney's fees in the amount of $61,439.11.
La.C.C.P. art. 863 provides in pertinent part:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
* * *
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.
* * *
La.C.C.P. art. 863 imposes an obligation upon litigants and their counsel who sign a pleading to make an objectively reasonable inquiry into the facts and the law; subjective good faith will not satisfy the duty of reasonable inquiry. Brooks v. Maggio, 33,734 (La.App. 2 Cir. 8/23/00), 766 So.2d 698, 700.
To decide whether sanctions are appropriate, a court must consider these factors in determining whether a litigant and his counsel made the required reasonable factual inquiry:
1. Time available to the signor or investigation;

*1229 2. Extent of the attorney's reliance on the client for factual support for pleadings;
3. Feasibility of prefiling investigation;
4. Whether the signing attorney accepted the case from another attorney;
5. Complexity of factual and legal issues;
6. The extent to which development of factual circumstances underline the claim required discovery.
Armond v. Fowler, 96-398 (La.App. 5 Cir. 11/26/96), 694 So.2d 358, 361. A trial court's determination of whether to impose sanctions will not be reversed unless it is manifestly erroneous or clearly wrong. Armond, 694 So.2d at 361.
Article 863 is intended only for exceptional circumstances and is not to be used simply because parties disagree as to the correct resolution of a legal matter.... Furthermore, nothing in the language of ... Article 863 empowers the district court to impose sanctions on lawyers simply because a particular argument or ground for relief is subsequently found to be unjustified.... Failure to prevail does not trigger a sanction award.
In determining a violation of ... Article 863 the trial court should "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted."
Fairchild v. Fairchild, 580 So.2d 513, 517 (La.App. 4 Cir.1991).
"The slightest justification for the exercise of a legal right precludes sanctions. Only when the evidence is clear that there is no justification for the legal right exercised should sanctions be considered. Any lesser standard would serve to seriously impair the rights of a party as a litigant." Fairchild, 580 So.2d at 518.
In reviewing the facts elicited at the hearings, we find no manifest error in the trial judge's conclusion that the filing of the intervention is not sanctionable. The evidence supports appellees' argument that the intervention was filed to protect Mary Lou's interest in bonds that may have been omitted from the succession of John R. Atchley and that Susan was claiming as part of the marital community between Susan and Ronald. Although Ronald initially opposed the intervention, the trial court authorized its filing, and Ronald ultimately decided not to seek review of that ruling by supervisory writs.
The fact that the intervention eventually was dismissed, after the court-appointed Special Master determined that none of the bonds listed as part of the marital community were part of the John R. Atchley succession property, does not make appellees subject to sanctions. Further, Ronald failed to timely object to the discovery conducted in the course of the intervention proceedings.
Accordingly, we find no error in the trial court's conclusion regarding the intervention proceedings, subsequent discovery matters, or in the court's failure to award sanctions for the filing of the Motion to Modify Protective Order filed on behalf of Mary Lou.

APPEAL BY GARRITY AND ANDERSON
Garrity's and Anderson's sole assignment is that the trial court erred in taxing them, as intervenor's counsel, with court costs for the intervention.
La.C.C.P. art.1920 provides for assessment of costs as follows: "Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed *1230 by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
Article 1920 of the Code of Civil Procedure does not give the court authority to cast a litigant's attorney in judgment for costs. Jordan v. Ryan, 97-2623 (La.App. 4 Cir. 4/22/98), 712 So.2d 974, 975.
Accordingly, the assessment of costs against Garrity and Anderson is reversed.
For the foregoing reasons, the judgment is affirmed in part, insofar as it refused to impose sanctions against Robert Garrity and Richard Anderson for filing of the intervention or to impose sanctions for filing of the Motion for Modification of Protective Order. The judgment is reversed in part, insofar as it assessed costs of the intervention against Robert Garrity and Richard Anderson.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Henceforth we will refer to the various Atchleys by their first names to avoid confusion.
[2] It is unclear from the record why the judgment dismissed the intervention, which had already been dismissed in a judgment rendered on March 26, 1997 pursuant to Ronald's exception of no cause of action.
[3] Garrity also stated that Susan filed a complaint with the National Securities Dealers Association and/or the Securities and Exchange Commission, as a result of which Ronald's employer conducted an investigation that resulted in his entering into a consent agreement for a two-week suspension from his duties as a licensed trader as well as payment of a fine.
[4] In a suit for removal of her trustees (Atchley v. Atchley, Trustee, et al., No. 506-446, 24th Judicial District Court, Parish of Jefferson), Mary Lou alleged she was sexually abused beginning at age four.
[5] She said she kept drugs in Anderson's office. Both Garrity and Anderson denied ever keeping drugs for Mary Lou.
[6] Mary Lou Atchley v. John Ronald Atchley, Trustee, et al., No. 484-848, 24th Judicial District Court, Parish of Jefferson, filed October 27, 1995.
[7] Mary Lou Atchley v. John Ronald Atchley and Marie Louise Atchley, No. 40-736, 25th Judicial District Court, Parish of Plaquemines, filed June 5, 1996.
[8] Susan E. Goldbach Atchley v. John Ronald Atchley, No. 471-747, 24th Judicial District Court, Parish of Jefferson, filed June 28, 1996.
[9] Succession of John R. Atchley, No. 81-3777, Civil District Court, Parish of Orleans, filed August 13, 1996.
[10] Mary Lou Atchley v. John Ronald Atchley, Trustee, et al., No. 506-446, 24th Judicial District Court, Parish of Jefferson, filed March 14, 1997.