845 So.2d 1171 (2003)
Christopher ALOMBRO
v.
Darryl ALFORTISH.
No. 02-CA-1082.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 2003.
Rehearing Denied June 9, 2003.
*1172 Brenda Braud, John Braud, Independence, LA, and A. Bruce Netterville, Gretna, LA, for Appellant.
Daniel A. Ranson, Gretna, LA, for Appellee.
*1173 Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Plaintiff Christopher Alombro has appealed the denial of his Motion to Recuse Judge Grant and the sanctions imposed as a result of that motion. For the reasons that follow, we affirm.
The defendant, Darryl Alfortish, lived with Alombro's mother, Sabrina Alombro, for approximately 13 years while Mr. Alombro was a minor. Mr. Alombro contends that during this time, funds were donated to him from Mr. Alfortish's mother and were converted by Mr. Alfortish to his own personal use. Mr. Alombro filed suit against Mr. Alfortish seeking to recover these funds. This suit, number 578-003, was allotted to Judge Jo Ellen Grant. Christopher's mother, Sabrina Alombro, filed a similar suit on behalf of her daughter born of her relationship with Darryl, Alexandra Alfortish. That suit, number 563-592, was allotted to Judge Cusimano. At the time these two actions on behalf of her children were filed, there were pending proceedings in Judge Grant's division, filed by Ms. Alombro against Mr. Alfortish, for child support and custody. This suit was numbered 549-712.
Mr. Alfortish filed a Motion to Consolidate the two matters regarding donations made to Ms. Alombro's minor children. As per the Local Rules of Court, the higher numbered suit was to be consolidated with the lower numbered suit, with both actions to be heard by Judge Cusimano. The Motion to Consolidate was set for hearing on April 25, 2002. On April 19, 2002, Mr. Alombro's counsel, Brenda Braud, filed a Motion to Continue the hearing on the Motion to Consolidate. The "duty judge" signed this motion, allegedly because Judge Grant was not available. On April 23, 2002, Judge Grant rescinded the order granting the continuance. On April 24, 2002, Ms. Braud, filed a Motion to Recuse Judge Grant.
The Motion to Recuse alleged that Darryl Alfortish's brother, Kenneth Alfortish, had a close personal relationship with Judge Grant's husband, Jack Grant. The motion further alleged that the Darryl had developed a friendship with Jack Grant and that he had stated that "his family's friendship with the Grant family will affect the outcome of litigation pending before this court in his favor." An identical motion was filed in the child support matter. Following arguments on the Motion to Recuse, Judge Grant denied the motion. Pursuant to the Code of Civil Procedure, the motion was then reallotted to Judge McCabe. Following a hearing, Judge McCabe also denied the motion and additionally, imposed sanctions. Mr. Alombro has appealed Judge McCabe's judgment denying the Motion to Recuse and the imposition of sanctions. Ms. Alombro also appealed the denial of the motion in her case. See Alombro v. Alfortish, 02-CA-1082, a companion case to this one.
We have previously summarized the testimony adduced at the hearing. At the conclusion of that hearing, Judge McCabe stated that he found no basis for the recusal and that there was no showing that there was any influence with Judge Grant. A judgment was signed denying the Motion to Recuse and allowing Mr. Alfortish to recover all costs and attorney's fees incurred as a result of the filing of the motion. Counsel for Mr. Alfortish was ordered to present counsel for the Alombros with an affidavit certifying the amount of attorney's fees and costs incurred.
*1174 Another hearing was held to allow the Alombros and their mutual attorney to traverse the affidavit. At the conclusion of this hearing, Judge McCabe awarded attorney's fees and costs in the amount of $1,940.90. Mr. Alombro has appealed both of these judgments.
On appeal, Mr. Alombro contends that he was denied due process when Judge Jo Ellen Grant failed to conduct a hearing, failed to sign an order voluntarily recusing herself and failed to sign an order directing the Motion to Recuse to be randomly allotted to another division.
A review of the record indicates this Assignment of Error is without merit. At the hearing before Judge Grant on April 25, 2002, the court instructed counsel to "state your names and representations for the record, please." Ms. Braud, counsel for Mr. Alombro, responded: "Brenda Braud, your honor, in both cases representing both plaintiffs." Obviously, Mr. Alombro's counsel was not only aware that the two motions were being heard together, she agreed to it. There is no indication in the record that either Mr. Alombro or his attorney made any objection to having the two recusal motions heard together. When there is no objection in the trial court, the complaining party is deemed to have waived his right to object to the alleged impropriety on appeal.[1] The reason for this rule is that in the absence of an objection, the trial court is not given an opportunity to prevent or correct the alleged error.[2] Thus, it patently clear both that Mr. Alombro's counsel agreed to the two motions being heard together, and that he has waived his right to object to the two motions being heard together.
Next, Mr. Alombro contends he was denied due process when Judge Patrick McCabe entered judgments against him without first affording him the benefit of a hearing. As we found hereinabove, the record supports the conclusion that Ms. Braud represented both of the Alombros and agreed to the joint hearing of the recusal motions. This assignment of error is without merit.
Mr. Alombro argues that the trial court's finding that his Motion to Recuse was in violation of C.C.P. art. 863 is manifestly erroneous and clearly wrong.
Article 863 states in pertinent part:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
. . .
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order *1175 to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.
The litigants and their counsel who sign a pleading have an obligation imposed by article 863 to make an objectively reasonable inquiry into the facts and the law upon which their pleading is based; subjective good faith will not satisfy the duty of reasonable inquiry.[3] A violation of any one of the duties imposed in the article fatally infects the entire certification.[4]
To decide whether sanctions are appropriate, a court must consider these factors in determining whether a litigant and his counsel made the required reasonable factual inquiry:
1. Time available to the signor or investigation;
2. Extent of the attorney's reliance on the client for factual support for pleadings;
3. Feasibility of prefiling investigation;
4. Whether the signing attorney accepted the case from another attorney;
5. Complexity of factual and legal issues;
6. The extent to which development of factual circumstances underline the claim required discovery.[5]
The determination of whether to impose sanctions will not be reversed on appeal unless it is manifestly erroneous or clearly wrong.[6]
We summarized the testimony at the recusal hearing in the companion case of Alombro v. Alfortish as follows:
At the hearing before Judge McCabe, to whom the recusal matters were re-allotted, Alombro testified that when she informed Alfortish in February that she would seek a change in custody and child support, Alfortish replied that his brother was "good friends" with Mr. Grant, and "it would be taken care of." Christopher and Alfortish's secretary, Maria Benoit, told her Alfortish had said the same thing to them. Alombro felt that certain rulings by Judge Grant were unfair, and that Alfortish had several times urged his counsel to mention Kenneth Alfortish. In the past, Alombro had met members of the Grant family in the Alfortish home or in public. Alombro claimed there was videotape depicting the Alfortish and Grant families growing up together, but she did not have a copy of this tape. On cross-examination, Alombro testified that she had no personal information that Alfortish had ever been to Mr. Grant's home, although she had been in the home of Kenneth Alfortish with Grant family members. She stated that she decided to ask her attorney to recuse Judge Grant a couple of weeks before the support hearing.
Mr. Grant testified that he had never met Darryl Alfortish prior to the date of *1176 the hearing. He met Kenneth Alfortish on one occasion since moving to Kenner in 1979. Mr. Grant was not a friend of Alfortish, and they had never spent time with each other. No one contacted him in connection with the proceedings prior to being called in the recusal matter. Mr. Grant's son and the son of Kenneth Alfortish had been friends, Mr. Grant's former wife was a friend of Kenneth's wife.
Darryl Alfortish testified that he did not tell anyone that his brother had influence with Judge Grant, and that Kenneth did not know Mr. Grant.
Christopher Alombro testified that approximately one year prior to the recusal hearing, Alfortish stated that he "had connections with the Grants" and that "everything is going to be taken care of."
Maria Benoit, formerly a secretary at Alfortish's Westside Fence Company, testified that Kenneth Alfortish told her he would talk to Mr. Grant about Darryl's case, "and he'll have his wife, who is a judge, take care of it." Darryl told her on numerous occasions that he would get matters "taken care of", naming Judge Grant in particular. She informed Alombro of this a few months prior to the recusal hearing. Ms. Benoit admitted on cross-examination that she was fired and that criminal charges were pending against her.
Yvonne Benavides, a cousin of Alfortish, testified that she never told Alombro of any statements made by Alfortish relative to Judge Grant, and never heard him make any such remarks. Benavides' daughter, Lisa Ebright, testified that several months before the hearing, Mr. Alfortish told her that Kenneth and Mr. Grant went to a country club together, "and that's when he told me about Judge Grant, that it was a piece of cake." At the time of the hearing, Ms. Ebright was in parish prison, and testified that Alombro's counsel had recently offered her a home when she was released.
A transcript of the recusal motion heard by Judge Grant was admitted into evidence without objection. In that transcript, Judge Grant stated that she did not know Mr. Alfortish, and that she has never spent time with him. The parties also stipulated that if Kenneth Alfortish were to be called, he would testify that he had no conversation with Ms. Benoit about the case.
In evaluating that testimony, we stated:
Applying the appropriate factors to the present matter, and viewing the testimony in its most favorable light, it is clear that Alombro knew for years of the (vague) relationship between the Grant and Alfortish families. The statements attributed to Alfortish had been made to, or revealed to Alombro, weeks, and sometimes months, before she filed her motion on the eve of the support hearing. There was no explanation from either Alombro or her attorney as to the timing of the Motion. Further, the trial judge correctly noted that inquiry could reasonably and easily have been made prior to filing the recusal. Even a superficial investigation would have revealed the dim and distant acquaintanceship between the Judge, her husband, and Alfortish's brother.
The tenuous and feeble nature of the allegations is difficult to ignore. Beyond the claims of influence, the Motion to Recuse outlined certain actions taken by Alombro's counsel and by the district court. The fact that Judge Grant rescinded *1177 an order for a continuance, which Alombro's counsel had signed by another division, was within her discretion, inasmuch as opposing counsel had not agreed to any continuance, and there was ample time for Alombro to present the motion to the proper court. Alombro also referred vaguely to certain rulings that prevented her from taking depositions and completing discovery. To the extent that Alombro's counsel relied on the unsupported statements of her client, such reliance does not relieve her counsel of the duty to make reasonable inquiry into the facts, and do not give rise to a "reasonable belief" that Judge Grant was unduly influence by a relative of Mr. Alfortish. Finally, we note that Ms. Braud was attorney of record for at least one year prior to filing this motion, ample time in which to acquaint herself with the behavior and relationships of these parties.
These same factors apply equally in the present case. Mr. Alombro himself testified that approximately one year prior to the recusal hearing, Alfortish stated that he "had connections with the Grants" and that "everything is going to be taken care of." Under the circumstances of this case, we find no error in the imposition of sanctions under C.C.P. art. 863.
For the reasons declared in that companion case, we hold that the facts of the case show that both Mr. Alombro and his attorney had the requisite notice of hearing under C.C.P. 863(E), and that the attorney fees awarded were not unreasonable under the circumstances.
Alfortish has filed an Answer to this appeal, requesting additional attorney fees for a frivolous appeal. Rule 2-19 of the Uniform RulesCourts of Appeal provides, "The court may award damages for frivolous appeal in civil cases as provided by law." Damages for a frivolous appeal are awarded pursuant to La.Code Civ.P. art. 2164, which states:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
An appeal is not automatically deemed frivolous simply because it lacks merit.[7] La. C.C.P. art 2164, is penal in nature and must be strictly construed. It provides that an appellate court may award damages for frivolous appeal when there is no serious legal question, when the appeal is taken solely for the purpose of delay, or when it is evident that appellant's counsel does not seriously believe in the position he advocates.[8]
We do not find that the present matter meets the requirements of a frivolous appeal, and therefore we decline to award additional attorney fees.
For the foregoing reasons, the judgments are affirmed. Mr. Alombro is assessed all costs of appeal.
AFFIRMED.
DALEY, J., dissents with reasons.
DALEY, J., dissenting with reasons.
I respectfully dissent from the trial court's affirmance of the award of sanctions in this case.
*1178 Plaintiff argues that the trial court's finding that his Motion to Recuse was in violation of C.C.P. art. 863 is manifestly erroneous and clearly wrong.
Article 863 states in pertinent part:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
The litigants and their counsel who sign a pleading have an obligation imposed by article 863 to make an objectively reasonable inquiry into the facts and the law upon which their pleading is based. Goldback v. Atchley, 01-616 (La.App. 5th Cir.11/27/01), 801 So.2d 1217.
The majority affirms the award of sanctions and states in pertinent part:
To the extent that Alombro's counsel relied on the unsupported statement of her client, such reliance does not relieve her counsel the duty to make reasonable inquiry into the facts, and do not give rise to a "reasonable belief" that Judge Grant was unduly influenced by a relative of Mr. Alfortish.
The transcript of the recusal hearing reveals that plaintiffs' counsel did more than rely on the unsupported statements of her clients.
Plaintiff's attorney was told by her client that Darryl Alfortish stated that he had undue influence with Judge Grant. The record at the recusal hearing in this matter clearly establishes that not only Christopher Alombro, but also his mother, Sabrina Alombro, Maria Benoit, who worked with Darryl Alfortish, and Lisa Ebright, a cousin of Mr. Alfortish, all testified under oath that either the defendant in this matter, Darryl Alfortish, or his brother, Kenneth Alfortish, made public statements that they were able to affect the outcome of this litigation due to a relationship with the trial judge's family. The trial judge after hearing this testimony did not find that Alfortist did not make assertions of undue influence.
The legal bases for bring a Motion to Recuse are set in Code of Civil Procedure article 151 it provides in pertinent part:
B. A judge of any court, trial or appellate, may be recused when he:
(5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.
The article clearly states that a judge may be recused if the judge is biased towards or against one party.
While I agree with Judge McCabe's finding that the recusal of Judge Grant was not warranted in this case because there was no proof of actual improper influence, I disagree with the majority's finding that sanctions are appropriate. The imposition of sanctions in this case when non-parties testify under oath that a party to the proceeding has boasted of inappropriate influence creates a chilling affect on any allegation of impropriety and *1179 is unwarranted. The Motion to Recuse was grounded in fact and law. At the hearing evidence was presented that Darryl Alfortish stated that the litigation would be resolved in his favor because of his brother's relationship with Judge Grant's husband. This evidence addressed the issue of bias, which is a grounds for recusal.
For these reasons I respectfully dissent and would reverse the award of sanctions in this case.
NOTES
[1] Bordelon v. Drake, 578 So.2d 1174, (La.App. 5 Cir.1991).
[2] Id.
[3] Goldback v. Atchley, 01-616 (La.App. 5th Cir.11/27/01), 801 So.2d 1217.
[4] Connelly v. Lee 96-1213 (La.App. 1 Cir. 5/9/97), 699 So.2d 411, writ denied 97-2825 (La.1/30/98) 709 So.2d 710.
[5] Goldbach, supra, citing Armond v. Fowler, 96-398 (La.App. 5 Cir. 11/26/96), 694 So.2d 358, 361.
[6] Goldbach, supra.
[7] LePrettre v. Progressive Land Corp. XXXX-XXXX (La.App. 3 Cir.6/19/2002), 820 So.2d 1240.
[8] Johnson v. Drury 01-833 (La.App. 5 Cir. 12/12/01), 806 So.2d 694