845 So.2d 1162 (2003)
Sabrina ALOMBRO
v.
Darryl ALFORTISH.
No. 02-CA-1081.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 2003.
Rehearing Denied June 9, 2003.
*1164 Brenda Braud, John Braud, Independence, LA, and A. Bruce Netterville, Gretna, LA, for Appellant.
Gregory G. Gremillion, Gretna, LA, for Appellee.
*1165 Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Appellant Sabrina Alombro appeals a judgment denying recusal and imposing sanctions under La. C.C.P. Art. 863 in favor of appellee Daryl Alfortish. Alfortish has answered the appeal and requested additional attorney fees on appeal. We affirm the underlying judgment and grant attorney fees as discussed herein.
The present case involves prolonged and bitter domestic litigation between Alombro and Alfortish, concerning custody, visitation, and support of their minor child, Alexandra Alfortish. The parties never married, but lived together for approximately 13 years, until February 2000. On February 15, 2000, Alombro filed a Petition for Domestic Abuse Protection, and a Temporary Restraining Order against Alfortish. Alombro was awarded temporary custody of Alexandra and use of the family residence, of which residence Alfortish was the sole owner. The parties subsequently entered into a consent judgment whereby joint custody was awarded with Alombro as the primary physical custodian. Under that agreement, Alfortish would pay child support and certain expenses. In addition, Alombro was to have use and occupancy of the residence until September 30, 2000. Injunctions against Alfortish were dismissed.
Both parties filed numerous motions and rules, including rules for contempt, change of custody, and changes in child support, and discovery was ongoing. Pertinent to this appeal, in several judgments rendered on January 30, 2002, the trial court granted in part and denied in part Alombro's Motion To Compel Discovery, and dismissed her rules for change of custody and for an increase in child support. A rule to decrease support filed by Alfortish in April 2001 remained viable. On February 28, 2002, Alombro filed a Motion To Fix Time For Filing Writ Application from the judgment relative to discovery, and appealed the judgments dismissing her custody and support rules. She also filed a rule for contempt for Alfortish's failure to pay Alexandra's medical expenses.
In the interim, on February 14, 2002, Alombro filed another rule for change of custody, increase in child support, and protection under the Family Violence Act. On February 15, the trial court referred this rule to the Domestic Commissioner. On April 11, 2002, the hearing officer heard both Alfortish's Rule for Decrease and Alombro's Rule For Increase, and as a result, reduced the interim child support. Custody was not determined. Alombro filed an objection to this ruling and requested an evidentiary hearing in the district court, which hearing was set for April 25, 2002. On April 24, the eve of the scheduled hearing, Alombro filed an Ex-Parte Motion to Recuse Judge JoEllen Grant and on April 25, she filed a "Motion To Stay Proceeding For Lack of Subject Matter Jurisdiction; To Set Aside The Order Of The Domestic Commissioner and Incorporated Memorandum." In that motion, Alombro alleged that the trial court was without jurisdiction concerning the issues of child support, visitation, and custody because of the appeal taken in February. Judge Grant denied the ex parte motion to recuse herself, and referred the matter for reallotment. The record indicates that on April 25, all matters were held open pending the ruling on the recusal.
On May 1, 2002, the recusal motion was heard and denied, and the trial court *1166 granted sanctions under La. C.C. P. art. 863. The court ordered payment of attorney fees and costs as the result of the filing of the motion to recuse against Alombro and her attorney in solido. Counsel for Alfortish was ordered to present to opposing counsel an affidavit certifying the amount of attorneys fees and costs incurred as a result of the filing of the motion to recuse. On June 7, 2002, a hearing on the traversal of the fees, costs, and sanctions was held, following which the court cast judgment against Alombro and her attorney in the amount of $3,102.15, with interest from date of judgment. Alombro has appealed these judgments.
The Motion To Recuse alleged that Judge Grant's husband was "a neighbor and very close personal friend of Kenneth Alfortish, the Defendant's brother, for many years." The pleading stated that Darryl Alfortish developed a friendship with Mr. Grant, and stated to third parties that this friendship would affect the outcome of his case; that this friendship was emphasized to the judge in court proceedings; and that prior rulings by the judge prevented Alombro from conducting meaningful discovery. Other occurrences were detailed which (apparently) were intended to demonstrate the bias of the trial court.
Another family matter involving Alombro's son Christopher Alombro and Alfortish had been filed and allotted to Judge Grant's division, and in that case, a nearly identical Motion to Recuse was filed.[1]
At the hearing before Judge McCabe, to whom the recusal matters were re-allotted, Alombro testified that when she informed Alfortish in February that she would seek a change in custody and child support, Alfortish replied that his brother was "good friends" with Mr. Grant, and "it would be taken care of." Christopher and Alfortish's secretary, Maria Benoit, told her Alfortish had said the same thing to them. Alombro felt that certain rulings by Judge Grant were unfair, and that Alfortish had several times urged his counsel to mention Kenneth Alfortish. In the past, Alombro had met members of the Grant family in the Alfortish home or in public. Alombro claimed there was videotape depicting the Alfortish and Grant families growing up together, but she did not have a copy of this tape. On cross-examination, Alombro testified that she had no personal information that Alfortish had ever been to Mr. Grant's home, although she had been in the home of Kenneth Alfortish with Grant family members. She stated that she decided to ask her attorney to recuse Judge Grant a couple of weeks before the support hearing.
Mr. Grant testified that he had never met Darryl Alfortish prior to the date of the hearing. He met Kenneth Alfortish on one occasion since moving to Kenner in 1979. Mr. Grant was not a friend of Alfortish, and they had never spent time with each other. No one contacted him in connection with the proceedings prior to being called in the recusal matter. Mr. Grant's son and the son of Kenneth Alfortish had been friends, Mr. Grant's former wife was a friend of Kenneth's wife.
Darryl Alfortish testified that he did not tell anyone that his brother had influence with Judge Grant, and that Kenneth did not know Mr. Grant.
Christopher Alombro testified that approximately one year prior to the recusal hearing, Alfortish stated that he "had connections *1167 with the Grants" and that "everything is going to be taken care of."
Maria Benoit, formerly a secretary at Alfortish's Westside Fence Company, testified that Kenneth Alfortish told her he would talk to Mr. Grant about Darryl's case, "and he'll have his wife, who is a judge, take care of it." Darryl told her on numerous occasions that he would get matters "taken care of", naming Judge Grant in particular. She informed Alombro of this a few months prior to the recusal hearing. Ms. Benoit admitted on cross-examination that she was fired and that criminal charges were pending against her.
Yvonne Benavides, a cousin of Alfortish, testified that she never told Alombro of any statements made by Alfortish relative to Judge Grant, and never heard him make any such remarks. Benavides' daughter, Lisa Ebright, testified that several months before the hearing, Mr. Alfortish told her that Kenneth and Mr. Grant went to a country club together, "and that's when he told me about Judge Grant, that it was a piece of cake." At the time of the hearing, Ms. Ebright was in parish prison, and testified that Alombro's counsel had recently offered her a home when she was released.
A transcript of the recusal motion heard by Judge Grant was admitted into evidence without objection. In that transcript, Judge Grant stated that she did not know Mr. Alfortish, and that she has never spent time with him. The parties also stipulated that if Kenneth Alfortish were to be called, he would testify that he had no conversation with Ms. Benoit about the case.
The trial court found no basis for recusing Judge Grant, in that there was no showing of any influence whatsoever over either the Judge or her husband. The court further determined that any "small amount of discovery or just inquiry" would have revealed that Mr. Grant and Mr. Alfortish were not friends or neighbors, and granted the attorney fees and costs, along with penalties, under La. C. C.P. art. 863 against both Alombro and her attorney in solido.
In her first Assignment of Error, Alombro urges that the court was without jurisdiction over issues of custody and child support during pendency of the appeal taken on February 28, 2002, and accordingly, any action taken by the court on the issue of child support afterward, "including but not limited to the motion to recuse Judge Grant in that claim" was null and void. This allegation is specious at best, since it is obvious that the issue of recusal was not a matter under review on appeal. Even if this allegation had a basis in law, we fail to see its relevance to the present appeal, which is from the judgments rendered by Judge McCabe. To the extent that Alombro attempts to appeal any custody or support judgments, no such judgments are before us.
Alombro does not challenge the denial of the Motion to Recuse, but rather urges that she should not have been sanctioned under C.C. P. art. 863. That article provides in pertinent part:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, *1168 or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
* * *
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.
La.C.C.P. Art. 863 imposes an obligation upon litigants and their counsel who sign a pleading to make an objectively reasonable inquiry into the facts and the law; subjective good faith will not satisfy the duty of reasonable inquiry.[2] A violation of any one of the duties imposed in the article fatally infects the entire certification.[3]
To decide whether sanctions are appropriate, a court must consider these factors in determining whether a litigant and his counsel made the required reasonable factual inquiry:
1. Time available to the signor or investigation;
2. Extent of the attorney's reliance on the client for factual support for pleadings;
3. Feasibility of prefiling investigation;
4. Whether the signing attorney accepted the case from another attorney;
5. Complexity of factual and legal issues;
6. The extent to which development of factual circumstances underline the claim required discovery.[4]
A trial court's determination of whether to impose sanctions will not be reversed unless it is manifestly erroneous or clearly wrong.[5]
Applying the appropriate factors to the present matter, and viewing the testimony in its most favorable light, it is clear that Alombro knew for years of the (vague) relationship between the Grant and Alfortish families. The statements attributed to Alfortish had been made to, or revealed to Alombro, weeks, and sometimes months, before she filed her motion on the eve of the support hearing. There was no explanation from either Alombro or her attorney as to the timing of the Motion. Further, the trial judge correctly noted that inquiry could reasonably and easily have been made prior to filing the recusal. Even a superficial investigation would have revealed the dim and distant acquaintanceship *1169 between the Judge, her husband, and Alfortish's brother.
The tenuous and feeble nature of the allegations is difficult to ignore. Beyond the claims of influence, the Motion to Recuse outlined certain actions taken by Alombro's counsel and by the district court. The fact that Judge Grant rescinded an order for a continuance, which Alombro's counsel had signed by another division, was within her discretion, inasmuch as opposing counsel had not agreed to any continuance, and there was ample time for Alombro to present the motion to the proper court. Alombro also referred vaguely to certain rulings that prevented her from taking depositions and completing discovery. To the extent that Alombro's counsel relied on the unsupported statements of her client, such reliance does not relieve her counsel of the duty to make reasonable inquiry into the facts, and do not give rise to a "reasonable belief that Judge Grant was unduly influence by a relative of Mr. Alfortish. Finally, we note that Ms. Braud was attorney of record for at least one year prior to filing this motion, ample time in which to acquaint herself with the behavior and relationships of these parties.
Considering the facts and circumstances of this case, we find no error in the imposition of sanctions under C.C.P. art. 863.
We note, although Alombro does not make such argument, that under La. C.C.P. art. 863, no sanctions can be imposed unless there is a hearing first, although the article does not provide a requirement for notice of such a hearing to be given. In the present case, we have not found a written motion filed by Alfortish requesting sanctions prior to April 29, 2002. Rather, the motion was made orally at the recusal hearing and granted. We agree with the First Circuit that due process requires reasonable notice in these cases.[6] Such notice would not have to be in writing and actual notice would be sufficient.[7] Since the manner of notice is not specified, appearing and acquiescing in the proceedings may waive such notice. In the present case, neither Alombro nor her attorney ever urged to the trial court a lack of adequate notice of the hearing, nor did either request a continuance or additional time to prepare for the hearing. Further, subsequent to the determination that sanctions would be awarded, Alombro and her attorney were notified of a Rule to Show Cause why legal fees and costs should not be awarded in the amount set forth by Alfortish's attorney, and a hearing on this matter was held. The facts of the case show that both Alombro and her attorney had the requisite notice under C.C.P. 863(E).
Finally, Alombro alleges that the court erred in awarding $3,102.15 because an indistinguishable portion of the attorney fees was incurred in conjunction with other matters. Alfortish's attorney was required to, and did, submit a detailed statement of the time expended on the recusal matter along with his affidavit. Counsel for Alombro was given the opportunity to traverse the statements.
Once the court determines that sanctions are appropriate the trial court has considerable discretion as to the type *1170 and severity of sanctions to be imposed.[8]
Four factors have evolved which must be considered in arriving at an appropriate sanction award. They are: (1) what conduct is being punished or is sought to be deterred by the sanction? (2) What expenses or costs were caused by the violation of the rule? (3) Were the costs or expenses "reasonable" as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention? (4) Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which [it] was imposed?[9]
Louisiana Code of Civil Procedure article 863 authorizes an award of "reasonable" and not necessarily actual attorney fees.[10] The goal to be served by imposing sanctions is not wholesale fee shifting, but correction of litigation abuse.[11] On review of the detailed statement submitted by Alfortish's attorney as well as his testimony on that statement at the hearing, we find no abuse of the court's discretion. The attorney was obliged to spend a significant amount of time in preparation for the recusal matter, and the amount awarded was sufficiently supported by the evidence and, applying the Brown factors, is not unreasonable under the circumstances.
Alfortish has filed an Answer to this appeal, requesting additional attorney fees for a frivolous appeal. Rule 2-19 of the Uniform RulesCourts of Appeal provides, "The court may award damages for frivolous appeal in civil cases as provided by law." Damages for a frivolous appeal are awarded pursuant to La.Code Civ.P. art. 2164, which states:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
An appeal is not automatically deemed frivolous simply because it lacks merit.[12] La. C.C.P. art 2164, is penal in nature and must be strictly construed. It provides that an appellate court may award damages for frivolous appeal when there is no serious legal question, when the appeal is taken solely for the purpose of delay, or when it is evident that appellant's counsel does not seriously believe in the position he advocates.[13]
We do not find that the present matter meets the requirements of a frivolous appeal, and therefore we decline to award additional attorney fees.
For the foregoing reasons, the judgments are affirmed. Alombro is assessed all costs of appeal.
AFFIRMED.
DALEY J., dissents with reasons.
DALEY, J., dissenting with reasons.
I respectfully dissent from the trial court's affirmance of the award of sanctions *1171 in this case. The majority affirms the award of sanctions and states in pertinent parts,
To the extent that Alombro's counsel relied on the unsupported statement of her client, such reliance does not relieve her counsel the duty to make reasonable inquiry into the facts, and do not give rise to a "reasonable belief" that Judge Grant was unduly influenced by a relative of Mr. Alfortish.
The record at the recusal hearing in this matter clearly establishes that not only Sabrina Alombro, but also her son, Christopher Alombro, Maria Benoit, who was secretary and worked with Darryl Alfortish, and Lisa Ebright, a cousin of Mr. Alfortish, all testified under oath that either the defendant in this matter, Darryl Alfortish, or his brother, Kenneth Alfortish, made public statements that they were able to affect the outcome of this litigation due to a relationship with the trial judge's family. Such testimony gives rise to a reasonable belief that the filing of a motion to recuse is warranted.
While I agree with Judge McCabe's finding that the recusal of Judge Grant was not warranted in this case because there was no proof of actual improper influence, I disagree with the majority's finding that sanctions are appropriate.
The imposition of sanctions in this case when non-parties testify under oath of statements of inappropriate influence creates a chilling affect on any allegation of impropriety no matter what's its basis and is unwarranted in this case.
For these reasons I respectfully dissent and would reverse the award of sanctions in this case.
NOTES
[1] Christopher Alombro has similarly appealled. Alombro v. Alfortish, 02-CA-1082.
[2] Goldbach v. Atchley, 01-616 (La.App. 5 Cir. 11/27/01), 801 So.2d 1217.
[3] Connelly v. Lee 96-1213 (La.App. 1 Cir. 5/9/97), 699 So.2d 411, writ denied 97-2825 (La.1/30/98) 709 So.2d 710.
[4] Goldbach, supra, citing Armond v. Fowler, 96-398 (La.App. 5 Cir. 11/26/96), 694 So.2d 358, 361.
[5] Goldbach, supra.
[6] See Lee v. Woodley, 615 So.2d 349, (La.App. 1 Cir.1993), writ denied 618 So.2d 411 (La. 1993).
[7] Id.
[8] Armond v. Fowler, supra.
[9] Dubois v. Brown XXXX-XXXX (La.App. 1 Cir. 5/10/02), 818 So.2d 864, writ denied XXXX-XXXX (La.10/14/02), 827 So.2d 421.
[10] Dubois v. Brown, supra, citing Butler v. Reeder, 98-484 (La.App. 5 Cir. 12/29/98), 728 So.2d 888, 895, writs denied, 99-1026, 99-1035 (La.5/28/99), 743 So.2d 673, 674.
[11] Id.
[12] LePrettre v. Progressive Land Corp. XXXX-XXXX (La.App. 3 Cir.6/19/2002), 820 So.2d 1240
[13] Johnson v. Drury 01-833 (La.App. 5 Cir. 12/12/01), 806 So.2d 694